## OSGOOD *v.* JONES.

The provision of Laws of 1878, c. 23, s. 3 (G. L., c. 24, s. 5), requiring the returns of votes for county officers to be made to and examined by the supreme court at its law term, did not in any way enlarge the jurisdiction of the court, or provide any new method of testing the validity or legality of elections, but merely transferred the duties of a canvassing board from the trial to the law term.

It is not the duty of the court sitting as a canvassing board to go behind the tabulated returns of votes, recount the ballots cast, and enter into a general investigation of the legality of the election, upon the motion of a claimant.

Proceedings in the nature of *quo warranto* to test the title to an office, being based upon an alleged usurpation, can only be maintained after an assumption of the office.

PETITION, of which the following is a copy:

To the supreme court, state of New Hampshire, Merrimack, ss.

Petition in nature of *quo warranto*.

*Edward Osgood* v. *John F. Jones*.

The petitioner, Edward Osgood, of Canterbury in said county, respectfully informs said court that he is the treasurer of said county, and that his term of office extends until June 30, 1881, and until his successor shall be chosen and qualified; that on the second day of November, 1880, an election for such successor was duly held within said county, at which the petitioner was a candidate for reëlection; that the returns of the election were made to the said court at the law term thereof, and that said court, on the 8th day of December, 1880, upon the tabulation of said returns, declared one John F. Jones, of Hopkinton in said county, duly elected county treasurer to succeed the petitioner.

The petitioner further informs the court that the said tabulation of the returns showed the following result: For County Treasurer— for Edward Osgood, 5,886 votes; for John F. Jones, 5,887 votes; and there appeared 29 scattering votes.

That said tabulation and said returns do not show the true and actual result of the election, and that said Jones was not elected county treasurer on said second day of November, and that the petitioner, Edward Osgood, was in fact then elected to that office; that the petitioner has taken steps to secure the transmission, according to law, to the secretary of state, of the original ballots cast in all the towns in said county, and that the petitioner has reason to believe and avers that a scrutiny and recount of said ballots will show that said Jones was not elected thereby; and that in particular the petitioner knows that one ballot was cast for him in said Canterbury which was not counted nor returned to said court, which ballot alone would make a tie and prevent the election of said Jones.

That the petitioner has reason to believe and avers that illegal ballots were cast and counted for the said John F. Jones; and that there were irregularities and illegalities connected with said declared election of said Jones; and that, in particular, illegal votes of paupers were cast and counted for said Jones in the town of Bradford, and illegal votes cast and counted for him in the town of Franklin, and the ballots in said town were thereupon destroyed in violation of law.

Wherefore the petitioner respectfully prays that an inquiry may be made by said court into the facts of said election in all the towns in said county, and that there may be an inspection, scrutiny, and recount of all the ballots for county treasurer from all the towns which may be returned to the secretary of state, and that there may be a recount of all the votes duly and lawfully cast

at said election; and that if upon such inquiry and recount it shall be found that said Jones was not elected, it may be so declared, and such order made and such writ issued as will exclude said Jones from said office of county treasurer, and that if it shall be found that the petitioner is elected, it may be so declared, and such order made and such writ issued as will entitle him to take possession of said office.

Edward Osgood,
*By his attorneys,*
John Y. Mugridge,
Wm. E. Chandler

The petition was filed at this term, and the defendant moved to dismiss.

*Chase & Streeter*, for the defendant. I. No such action is authorized by law.

(1) The remedy that the common law furnishes for cases in which it is claimed that a party usurps an office or a franchise, is a writ of *quo warranto*, or an information in the nature of *quo warranto*. High Ex. Rem., s. 591, *et seq.;* Dill. Mun. Corp., c. 21; McCrary Elections, ss. 264, 317, 320; 3 Black. Com. 262, *et seq.; State* v. *Sherwood*, 15 Minn. 221; *Com.* v. *Commissioners*, 5 Rawle 74; 2 Ad. Torts 1272, and authorities cited; *State* v. *Thompson*, 36 Mo. 70; *People* v. *New York*, 3 Johns. Cas. 79; Angell & Ames Corp., c. 21; *Attorney-General* v. *Salem*, 103 Mass. 139.

(2) The statute law of the state does not authorize this action.

II. If this action were a writ of *quo warranto*, or an information in the nature of *quo warranto*, or a petition for either, it would be fatally defective because prematurely brought. The *quo warranto* remedy in any of its forms is applicable only in those cases where there has been a usurpation, misuser, or non-user of a public office or franchise. It cannot be sustained against a person who has not taken possession of or used the office in question, any more than an action of trespass can be maintained against a person who threatens to enter upon another's land, or take his horse, before he actually does so. It is designed to redress a wrong, not to prevent one. High Ex. Rem., ss. 627, 655; Ang. & Ames Corp., s. 744; *Regina* v. *Armstrong*, 34 Eng. Law and Equity 288; *Regina* v. *Slatter*, 11 Ad. & El. 505; *Rex* v. *Ponsonby*, 1 Ves., Jr., 1; *People* v. *Thompson*, 16 Wend. 655; *People* v. *McCullough*, 11 Abb. Pr. (N: S.) 129; *Rex* v. *Whitwell*, 5 T. R. 85.

III. *Quo warranto* is a legal remedy, and, being adequate for the purpose, ousts equity of its jurisdiction of such cases as this, in accordance with the general principle denying equitable relief where full relief can be had at law. High Ex, Rem., ss. 619, 641; Dill. Mun. Corp., ss. 714, 210; *Tappan* v. *Gray*, 9 Paige Ch. 507— S. C., 7 Hill 259; *Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 371; *Hughes* v. *Parker*, 20 N. H. 58; *Detroit* v. *Board of Public*

*Works*, 23 Mich. 553; *Markle* v. *Wright*, 13 Ind. 548; *Updegraff* v. *Crans*, 47 Penn. St. 103.

IV. The practice in this state as to *quo warranto* seems to have conformed to the common-law rules in all cases reported, excepting in *Cate* v. *Furber*, 56 N. H. 224, *State* v. *Olcott*, 6 N. H. 74, *State* v. *Fourth N. H. Turnpike*, 15 N. H. 162, *State* v. *Barron*, 57 N. H. 498, *State* v. *P. & O. R. R.*, 58 N. H. 113. In *Cate* v. *Furber*, objection was made by the defendant to the form of the proceedings, but as the court found, upon the facts before them, that the defendant was entitled to his office, they deemed it unnecessary to decide the questions thus raised by him. The case cannot be regarded as a precedent upon the points here under consideration.

*Mugridge* and *Chandler*, for the plaintiff. We have no occasion to find fault with the demonstration of counsel, that a writ of *quo warranto*, or an information in the nature of *quo warranto*, is the remedy afforded by the common law for the purpose of correcting the usurpation of a public office, nor their claim as to what should be the course of procedure upon the part of the attorney-general in case he should ever attempt to file an information in the nature of a *quo warranto*, nor as to the English practice in this regard, nor that a bill in equity will not lie to try the title to an office. The authorities embodied in their brief on these points are but the common and elemental learning of the books, and the petitioner controverts none of the positions.

The precise questions before the court are,—

1. Will the court, upon the petition before it (amended, if necessary, to make it more specific in any particular), inquire into the claim or right of the defendant to the office in question?

2. Will it make such inquiries now, before the defendant has actually assumed to discharge the duties of the office to which he has been declared elected?

The court having refused to ascertain the facts of the election of the county treasurer by going behind the returns before declaring the result, is now asked to ascertain them upon a simple petition of a claimant, after the time of the declaration in December, 1880, and before the time in July, 1881, when the officer really elected is entitled to assume his duties.

The petitioner says the case should proceed on its merits now:

I. That the petition should not be dismissed because not filed "by leave of the court," and in the name of the state or the attorney-general, is clear.

Both objections are merely for want of form or parties; and both defects, if necessary, may be supplied under our statutes and practice allowing amendments, and directing that actions shall not abate for want of parties. G. L., c. 226, ss. 8, 16. Proceedings to try title to an office where the plaintiff is a claimant are now everywhere admitted to be mere civil suits in substance, whatever

their form; and in New Hampshire the form has been wisely made to correspond to the substance.

II. The six months between the declaration of election and the commencement of the term should be utilized in trying the facts and keeping a usurper from going in. If the defendant does not claim the election, he can disclaim title, and the case and controversy are ended. If he does intend to take the office, why should he not now, before he gets in, defend his title thereto? The doctrine that the title cannot be tried until the defendant actually usurps, has gradually dwindled to the smallest possible point, and in this state we submit it should be treated as entirely gone. *King v. Tate,* 4 East 337; *King* v. *Harwood,* 2 East 177; *People* v. *Callaghan,* 83 Ill. 128.

According to the New Hampshire authorities, all the forms of obtaining leave of the court and bringing the action in the name of the state are gone; and upon a mere petition by one claimant of an office, the courts have reëxamined the facts of the election and determined who was lawfully elected. *Portsmouth's Petition,* 19 N. H. 115; *Judkins* v. *Hill,* 50 N. H. 141; *Cate* v. *Furber,* 56 N. H. 224.

It is respectfully submitted that the progress towards emancipation from technicalities, which stood in the way of convenient proceedings and prompt and effective justice, should continue; and that the court should not tell the petitioner to wait until the defendant installs himself next July in an office to which he was not elected, but which he does not disclaim or renounce.

*Chase & Streeter,* for the defendant, in reply. One inquiry arising under this question is, whether the court has authority to consider the plaintiff's case upon petition—whether a petition is the proper form of action (be it legal or equitable) in which to redress the wrong complained of. Unless this be a petition for leave to file a *quo warranto* information or writ, we maintain that the proceeding is wholly unauthorized in law. Civil actions at law are commenced by writs; criminal actions, by complaints, indictments, or informations; suits in equity, by bills in equity. The statutes authorize certain actions to be commenced by libel, as proceedings for divorce (G. L., *c.* 182); others by petition, such as those relating to the laying out or discontinuing highways (G. L., *cc.* 69 and 71); but the statutes do not authorize an action like the one under consideration to be commenced by petition. We call upon our brethren to point out the statute that authorizes this proceeding. If none exists, and the proceeding is not authorized by the common law, the court have no power to act upon this petition. Suppose the defendant was indebted to the plaintiff upon a promissory note in the sum of $100, which he neglected or refused to pay, or that, claiming the plaintiff's horse, he had taken it into his possession: no one would maintain that the plaintiff could

obtain his rights of the defendant in an action commenced by petition. In the case under consideration, there is a remedy *(quo warranto)* as fixed and clear in its form and application as is the action of assumpsit or trover, and there is no statute or other authority for a departure from the established forms in the one case any more than in the other.

CLARK, J.    Under the system of annual elections prior to 1878, the returns of votes for county officers were transmitted by the town-clerks of the several towns to the clerk of the supreme court for the county, on or before the first day of the sitting of the court, at the next stated term after the second Tuesday of March in each year; and it was the duty of the court to examine the returns of votes, record and count the same, and declare the person who had received the highest number of votes for each office to be elected. Gen. St., *c.* 23, *ss.* 4, 5.    After the adoption of the amended constitution, providing for biennial elections and a consequent change in the tenure of offices, the legislature of 1878 enacted that county officers chosen in November, 1878, should take their places on the first Wednesday of June, 1879; and those thereafter chosen should take their places on the first day of January next succeeding their election, and should hold their offices for two years, and until others were chosen and qualified in their stead; and for the reason that no term of the supreme court is held in most of the counties between the day of election in November and the first day of January, when the persons elected were required to enter upon the discharge of their official duties, it was enacted that the returns of votes should be examined, recorded, counted, and a declaration made at the law term of the supreme court in December, instead of at the trial terms in the several counties.    Laws 1878, *c.* 23, *ss.* 2, 3, 4.    The legislature of 1879 changed the time of the commencement of the term of office of county officers from the first day of January to the first day of July next succeeding their election (Laws 1879, *c.* 1, *s.* 1), and the reason of the change of canvassing the returns to the law term no longer exists.

The statute of 1878 transferred the duties of a canvassing board from the trial terms to the law term.    It did not enlarge the jurisdiction of the court, or provide any new method of testing the validity or legality of elections.    The powers of the court, and the mode of procedure to determine the rights of claimants in cases of contested elections, remain unchanged.    For this reason we declined, upon motion of the petitioner, to go behind the tabulated returns, recount the ballots cast in all the towns in the county, and enter into a general investigation of the legality of the election, being of the opinion that the statutory duty imposed upon the court as a canvassing board did not require an entry upon such an investigation at that stage of the proceedings, upon the motion of a claimant.    *Osgood* v. *Jones, ante* 273.

Upon a petition describing itself as "in nature of *quo warranto*," the plaintiff now asks the court to determine the prospective right to the office of county treasurer for a term of two years, to commence on the first day of July next. No special statutory duties are imposed upon the court in matters pertaining to the election of county officers beyond the performance of the duties of a canvassing board, and it is not alleged that those duties have not been fully and properly performed. It is not claimed that there is any irregularity in the returns of votes or in the count of the ballots declared, nor are any facts alleged calling upon the court to interfere, by mandamus or other process or order, for the correction of errors, or for the enforcement of the performance of official duty by subordinate officers. The matters alleged require an investigation of the legality of the election beyond the returns, for the purpose of testing the title to the office, and determining the right of possession. In other jurisdictions it is held that *quo warranto* is the appropriate form of procedure for such investigation, in the absence of statutory provision. McCrary Elections, *ss.* 320, 322, 335, 374; High Ex. Rem, *ss.* 53, 77, 619; Dill. Mun. Corp., *c.* 21. And it is well settled that proceedings in the nature of *quo warranto* which are based upon an alleged usurpation can only be maintained after an assumption of the office. *Rex* v. *Whitwell*, 5 T. R. 85; High Ex. Rem., *ss.* 619, 627, 641; Dill. Mun. Corp., *c.* 21, *ss.* 716, 724.

This petition, being in the nature of a *quo warranto*, is premature. It is not authorized by any statutory provision or common-law procedure, and no precedent is found to sustain it. The office of county treasurer is now held by the plaintiff, and the defendant has not usurped it. Whether, in some form of proceeding, upon facts properly presented, the court may determine the prospective right to an office to prevent usurpation, we have not considered.

*Petition dismissed.*

All concurred.