Judge Hitchcock
delivered the opinion of the court:
*This case is one of no ordinary importance, inasmuch as its decision calls for an exposition of the constitution itself, and also for an examination into the constitutionality of some of the laws purporting to be made under that constitution. Section 8, of article 3, of the constitution provides that, “The judges of the Supreme Court, the president, and the associate judges of the court of common pleas shall be appointed by joint ballot of both houses of the general assembly, and shall hold their offices for the term of seven years, if so long they behave well.” Although this power of appointment is vested in both houses of the general assembly, still the constitution has not prescribed the particular manner in which it shall be exercised, except that it shall be by “joint ballot.” This is left to be regulated by the legislative authority, and is regulated by the joint rules of the two houses. They meet in convention, with their speakers and clerks, the speaker of the senate presiding. The ballots are collected and counted, each clerk keeping a separate check-book; and when any individual is found *329 to have a majority of all the votes given, that individual ia ■declared by the speaker of the senate to be duly elected to the ■office to be filled. An individual thus elected has a right to the office, and can not be deprived of that right, except in the mode pointed out in the constitution. He can not be deprived of it by the mistake of the clerks, for such mistake would be corrected by the bodies by whom they are appointed. He can not be deprived of it by the neglect of the speakers; they are the organs of the ■different houses, and should they neglect any duty its perform.ance would be enforced by that branch of the legislature over which they preside. Besides all this, “An act to provide for commissioning certain officers ” (29 Ohio L. 409) contains this proviso, “ That the election of all officers elected or appointed by the legislature shall bo certified by the speakers of both houses.” .Should the two speakers refuse to sign such certificate (a circumstance by no means probable), power is vested in this court to compel them to do it. By section 3 of the practice act, 29 Ohio L. 56, the Supreme Court is authorized to issue a mandamus in •proper cases. And in case of such refusal, this would be undoubtedly a competent and proper remedy.
*The act before referred to (29 Ohio L. 409) enacts, “ That each judge of the Supreme Court, president, and associate judges ■of' the court of common pleas, sheriff, coroner, auditor, state treas.urer, militia officer, and justice of the peace, and every officer whose office is created by law, and not otherwise provided for, shall be entitled to receive from the governor a commission to fill such office upon producing to the secretary of state a legal certificate of his being duly elected or appointed.” This “ legal certificate,” in case of an officer elected or appointed by the general assembly, is a certificate signed by the speakers of both houses. Upon the production of such certificate, the governor will issue a •commission. Should he refuse, he is within the reach of the same writ of mandamus. The governor of Ohio is no less answerable to the operation of law than the most humble citizen. And it is to •be hoped that no citizen will ever fill that important office who entertains a different sentiment.
Here, then, ample provision is made whereby the rights of any officer, whose appointment is by the constitution vested in the general assembly, maybe secured. Ho is elected by joint ballot •of the two houses, met in convention. His election is declared by *330 ,the presiding .officer. If any mistake occurs, it can be corrected! at once. Journals are kept of all the proceedings from day to day, and these journals are read in each' house every morning. Here is another opportunity to correct any mistake which may have-crept in, through accident or design, in the proceedings of the next preceding day. Or should a mistake be discovered at any time during the session, it might still be corrected. If the individual be declared by the speaker of the senate to be elected, h® is entitled to a certificate. If this be withheld, upon application to the general assembly he might compel its signature; or if h® should fail here, authority is vested in this court to grant redress in the manner before referred to.
Upon the production of this certificate the governor will issue a. commission; without it he does not possess the power.
In the case before the court the evidence is such as t¡o induce-a belief that the defendant, .Lemuel Moffitt, was elected, at th® time by him stated, an associate judge. At least *the evidence is such as would have been, in all probability, sufficient to-establish this fact, had it been exhibited]» the proper tribunal at the proper time and place. If when the journals of the house of representatives were read, on January 23, .1831, this evidence had been exhibited, there can be no doubt that that house would have-ordered the-correction of their journal, so that it would have appeared that the defendant Lemuel Moffitt, instead of Samuel Moffitt, had been, on the day preceding, elected an associate judge. If a mistake had been introduced, this was the appropriate time-for its correction.
But whether this be the appropriate evidence to prove, before a judicial tribunal, the fact of an election, by the two houses of the general assembly, is a more serious question. In section 9 and article 1 of the constitution, it is required that “ each house shall keep a journal of its proceedings, and publish them.” This journal, when taken in connection with the laws and resolutions, would seem to be the appropriate evidence of legislative action. It is not the action of a single member of the legislature of which I speak, but of the whole body of the “ general assembly.” The former might with propriety be proven by parol testimony, but the latter is evidenced by evidence of a higher nature. The testimony of an individual member could not be received to contradict a statute, and if not, why receive it to contradict an entry upon *331 the journal? Besides, the principle that an election might be-proven by parol, would be fraught with danger. Where is .the man, who has been for years a member of the legislature, possessed of a memory so tenacious, that he can undertake to state the-names of the individuals for whom he has given votes for the office of associate judge, or for other offices? I presume he cannot be found.
But suppose this evidence is competent, even before a judicial1 tribunal, is it sufficient to justify the defendant? Giving it the greatest latitude contended for by his counsel, it amounts to no-more than this, that he was elected an associate judge and that he •took the oath of office. It is not pretended that a certificate of this election was ever signed by the two speakers, or that he ever-received a commission. In fact the ground assumed is, that a commission is ^unnecessary. It may be well to refer to the several statutes which are connected with this subject.
The “act declaring offices vacant in certain cases, and to-provide for filing the same,” passed January 25, 1813, 29 Ohio L. 407, contains this provision, in section 1, “Every commission-that may be hereafter issued by the governor, to any judge of the-Supreme Court, president or associate judge of either of the courts of common pleas, shall be transmitted by the secretary of state to-the clerk of the court of common pleas of the county wherein such judge may reside; and it is hereby made the duty of the clerk to receive and transmit the same to the person entitled thereto;, whereupon such person, having received such commission, shall take the oath required by the constitution and laws of this state, and transmit a certificate thereof to the same clerk, signed by the-officer administering such oath or affirmation, within twenty days-after he shall have received such commission.
In section 2 of the same act it is provided that if a certificate-as aforesaid is not transmitted to the clerk within the said twenty days, the person entitled to the commission shall be deemed to have-' refused to accept the office, and the same be considered as vacant. This law prescribes the mode in which a person elected to am office shall signify his acceptance. And it will be apparent, at first blush, that some provision of this kind is necessary; otherwise there might be no individual, for a time at least, to fill am important station.
Next in order comes the statute “to provide for commissioning; *332 .certain officers,” passed February 26, 1816. 20 Ohio L. 409. This .statute has already been referred to, and it is unnecessary here to ■say more than that it contemplates that all the officers therein ■named shall be commissioned.
I will next refer to section 5 of the “act to organize the judicial courts,” enacted March 18, 1831. 29 Ohio L. 57. The provision in this section is explicit, “that the judges of the Supreme Court and presidents and associate judges of the court of ■common pleas, before they proceed to execute the duties of their ^respective offices, shall each take an oath or affirmation to administer justice without respect to persons, and to do equal right to the poor and to the rich, and faithfully and impartially to discharge and perform all the duties incumbent on him as a judge, according to the best of his abilities and understanding, ¡.agreeably to the constitution and laws of this state, and have the ■some indorsed on his commission.”
Now taking all these statutes together I draw from them these .inferences: that every man before he presumes to exercise the office of a judge must have a commission, must signify his acceptance of the appointment, and must take an oath of office, and have •the same “ indorsed on, his commission.” By taking the oath he signifies his acceptance, but he is expressly prohibited from dis- ■ charging the duty until the “ indorsement ” is made. This may be considered as a mere trifle, as useless formality. But shall a man who assumes the character of a judge treat any part of the law as insignificant and trivial? It would rather become him to ■ be scrupulously exact in his compliance with every scintilla of ■law. Let others, if they will, complain of the unnecessary provision • of any statute or of any other principle of law, but such language ■ does not become a judge. Let me not be misunderstood ; it is not the commission issued in pursuance of these statutes which confers the right upon the officer. The right is derived from the election .■or appointment, of which the commission is only evidence. But it is evidence without which the officer can not proceed to act officially.
It would seem, upon an examination of these statutes, that •there must be an end of the question before the court, so far as it respects the right of the defendant to exercise the duties of the -office which he has assumed, there being no evidence that he •was ever commissioned, or even that it was ever certified by the *333 speakers of the two houses that he had been elected. This court believe a commission to be the only evidence of the right, unless it be shown that these several statutes are a violation of the constitution.
This, although not expressly alleged, seems to be insinuated by the counsel for the defendant. But with what particular part of that instrument they interfere is not suggested. Upon examination of the constitution it will be *found that there is no express provision that any officer shall be commissioned, except in case where a vacancy happens, during the recess of the legislature, in any office the power to fill which is by the constitution vested in the general assembly. In such case, the governor is authorized, by section 8 of article 2, to fill such vacancy by granting a commission, the commission to expire at the end of the next session of the legislature. But that it was intended that. commissions should be issued is sufficiently apparent from other parts of the constitution. Section 15 of the same article is as follows: “All grants and 'commissions shall be in the name and by authority of the State of Ohio, sealed with the seal, signed by the governor, and countersigned by the secretary of state.” In article 5, reference is had to commissioned officers. Had these clauses been omitted, still the court can not doubt but these laws would have been constitutional. A law authorizing any other body than the general assembly to appoint a judge for the term, of seven years, or for any period of time beyond the close of the next session of the legislature, would infringe the constitution. Because this power is by that instrument expressly delegated to • that body. The constitution, however, has not prescribed the form of the oath of office; the legislature, therefore,' might prescribe it, not being prohibited. Neither does the constitution describe the evidence which shall exist that an individual has been appointed to an office. The legislature have done it by providing that evidence shall exist in a commission executed according to the form of the constitution. We see no usurpation of power in all this, but a course of legislation which tends to the-convenience and well being of the community. The constitution provides, article 8, section 1, that sheriffs and coroners shall be-elected by the citizens of the several counties, and goes no further. Are the laws, therefore, which require that these officers shall be- *334 commissioned,Ahat they shall give bonds and take oaths of office, -unconstitutional ? It can not be successfully contended.
To sustain the right of the defendant in his case, his counsel rely on the case of Marbury v. Madison, 1 Cranch, 137. It will be found, however, that that case is not analogous to *the present. Mr. Marhury had been appointed justice of the peace for the District of Columbia, by the President of the United States, by .and with the advice and consent of the senate. A commission witnessing that appointment had been signed by the President, countersigned by the secretary of state, and sealed with the great ■seal of the United States; and was deposited in the office of the ¡secretary of state. The case before the court was an application for a mandamus to compel Mr. Madison to deliver over this commission. ' The court held that the appointment was complete, that •¡the applicant had a vested right in the office, and was entitled to the commission; but they discharged the rule because they had ■not jurisdiction of the case.
Had this case been an application, on the part of Mr. Moffitt, for .a mandamus to the speakers of the two houses, to compel them to sign the certificate of his election, or the governor to compel him to sign a commission, it would have been somewhat analogous to •the case in Cranch, but now it is not. Mr. Moffitt has assumed to act without a commission and in contravention of the law. Under these circumstances, it is clearly the opinion of the court that he has acted without authority, and that he has not, so far as appears from any evidence now before us, any right to exercise the office • of associate judge for Ashtabula county.
To decide otherwise would involve the community in great difficulty. Almost every officer in this state is elected by the legislature, or by the people, and the laws have made ample provision ' for the evidence with which the individual elected shall be furnished of his election. If these laws-were to be disregarded, and the fact of the election should be left to be proven by the frail memory of the electors, it is not possible to conceive of the confusion which would follow. Still this is substantially the prih- ■ ciple which we are urged to adopt, and which we must adopt, in • order to justify the course pursued by the defendant. We can not • do it.
It is objected, for the defendant, that the case is not properly ■before the court. Writs of quo warranto have been issued by this *335 court; or rather rules to show cause why such writs should not issue have been granted. Still no course of practice has been, until last year, settled by the court. It is ^matter of regret that the legislature have not acted upon the subject, prescribing the course of proceeding and settling the law.
In the case before the court, the application for the writ is made by a private individual. In the case of the Bank of Mount Pleasant, decided at the last term, 5 Ohio, 249, it was ruled that an application for a writ of quo warranto against a corporation should •be made by the prosecuting attorney of the proper county, unless •otherwise ordered by the court. The same reason operates where the writ is to issue against an individual as against a corporation. According to the authority of that case, the proceedings in the •case before the court are irregular, and the application must be ■dismissed at the costs of the applicant.