OSGOOD *v.* JONES.

The appropriate proceedings to determine the right of a person to a public office which he has usurped, is an information in the nature of a *quo warranto*, or a petition therefor, by the attorney-general in the name of the state.

A bill in equity by a private individual for an injunction to restrain the exercise of official functions cannot be maintained, although there has been no actual entry upon the office.

BILL IN EQUITY. The following facts were alleged: The plaintiff is treasurer of Merrimack county. His term of office extends until June 30, 1881, and until his successor shall be chosen and qualified. November 2, 1880, an election for a successor was held, at which the plaintiff was a candidate for reëlection. The returns of the election were made to the court at the law term. The court, December 8, 1880, upon the returns, declared the defendant elected treasurer to succeed the plaintiff. The returns showed that the plaintiff received 5,886 votes, and the defendant 5,887 votes, and there appeared to be 29 scattering votes. The returns do not show the true and actual result of the election. The defendant was not elected treasurer November 2, 1880, but the plaintiff was in fact then elected treasurer, and has taken steps to secure the transmission, according to law, to the secretary of state of the original ballots cast in all the towns in the county, and has reason to believe an examination and recount of the ballots will show that the defendant was not elected to the office; that in particular one ballot was cast for the plaintiff in Canterbury which was not counted nor returned to the court, which ballot alone would make a tie, and prevent the election of the defendant;

and he has reason to believe, and he avers, that illegal and fraudulent ballots were cast and counted for the defendant in the towns of Bradford, Canterbury, Bow, and Northfield; and there were other informalities and illegalities connected with the ballots cast for the defendant, and in his election as treasurer.

The plaintiff further says he is informed and believes that the defendant claims he has been elected treasurer, and insists that he will be entitled to the office, and to discharge the duties thereof after June 30, 1881, and threatens, and, as the plaintiff fears and believes, intends, to enter upon the same, claim the right thereto, and will undertake and assume, after June 30, 1881, to discharge the duties of treasurer.

The prayer is for an injunction to restrain the defendant from entering upon the discharge of the duties of treasurer after June 30, 1881, and from in any way intermeddling with the office, or from in any way hindering, obstructing, interrupting, or interfering with the plaintiff in his discharge of the duties of the office, after June 30, 1881, and for general relief.

The defendant demurred,—1, because this court, as a court of equity, has no jurisdiction of the case; 2, because the plaintiff has a plain and adequate remedy at law; 3, because if equity had jurisdiction, and this action could be maintained, the allegations of the bill are not sufficiently full and certain; 4, because the bill is, in other respects, erroneous, defective, and insufficient.

*J. Y. Mugridge*, for the plaintiff. The court, as a court of equity, has jurisdiction in this case. The process is a bill in equity *quia timet*. It alleges, in substance, that the plaintiff is treasurer of Merrimack county, and is rightfully in possession of that office, and that he is by law entitled to hold the same until another person is legally chosen in his place; also, that the defendant is not legally chosen, but wrongfully threatens to assume the duties of the office after June 30th, and the plaintiff fears that he may harass and vex him in the discharge of his duties of his said office, and by his conduct cause great wrong and mischief to the plaintiff; and an injunction is asked for to prevent such consequences.

The plaintiff " seeks the aid of a court of equity because he fears some future probable injury to his rights or interest, and not because an injury has already occurred which requires any compensation or other relief." The bill is to " accomplish the ends of precautionary justice," and should, under the well established principle of equity proceedings, be entertained by the court. 2 Sto. Eq. Jur., *s.* 826; *Walker* v. *Cheever*, 35 N. H. 339; *Wells* v. *Pierce*, 27 N. H. 503, 512.

*Chase & Streeter*, for the defendant. High, in his work on Injunctions, *s.* 1312, says,—" No principle of the law of injunctions,

and perhaps no doctrine of equity jurisprudence, is more definitely fixed, or more clearly established, than that courts of equity will not interfere by injunction to determine questions concerning the appointment of public officers, or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum for determining disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common-law remedy by proceedings in the nature of a *quo warranto.*" He cites the following authorities to this proposition: *People* v. *Draper*, 24 Barb. 265—*S. C.*, 4 Abb. Pr. 322, and 14 How. Pr. 233; *Moulton* v. *Reid*, 54 Ala. 320 (a case similar to this, and to which we ask particular attention); *Beebe* v. *Robinson*, 52 Ala. 66; *Planters' Compress Ass.* v. *Hanes*, 52 Miss. 469; *Tappan* v. *Gray*, 9 Paige Ch. 507, affirmed 7 Hill 259; *Sheridan* v. *Colvin*, 78 Ill. 237; *Patterson* v. *Hubbs*, 65 N. C. 119; *Jones* v. *Commissioners*, 77 N. C. 280; *Colton* v. *Price*, 50 Ala. 424; *Delahanty* v. *Warner*, 75 Ill. 185; *Dickey* v. *Reed*, 78 Ill. 261.

In the last case cited *(Dickey* v. *Reed)* the court say,—"We are aware of no adjudged case, or text writer, who has ever announced the power as inherent in the courts of equity to try contested elections between persons claiming an office. It is believed that no case can be found where an English court of chancery has ever tried a contested election where the public were concerned; and such cases are believed to be of rare occurrence in this country, and then only when their power has been conferred by express enactment, or necessary implication therefrom." In other cases herein cited the courts use similar language. See, also, Pierce R. R. 27; Dill. Mun. Corp., *ss.* 714, 210; 2 Kent 314; McCr. Elect., *ss.* 220, 458; High Ex. Rem., *ss.* 619, 641; *Boren* v. *Smith*, 47 Ill. 482, 485; *People* v. *Wiant*, 48 Ill. 263; *Moore* v. *Hoisington*, 31 Ill. 243; *Cochran* v. *McCleary*, 22 Iowa 75, 86, in which Judge *Dillon*, delivering the opinion of the court, says,— "The court of chancery goes so far as to hold that it will not interfere, before a trial at law, in favor even of an officer *de jure* against an illegal claimant, by enjoining the latter from exercising the functions of the office." *Markle* v. *Wright*, 13 Ind. 548.

In *Detroit* v. *Board of Public Works*, 23 Mich. 546, Judge *Cooley*, after stating that the ground of the application for an injunction is to prevent irremediable mischief, says,—"I suppose we may assume that in the generality of such controversies the respondent party is as often found to be in the right as his adversary. To sustain the bill, therefore, we must hold that equity may take cognizance of a controversy when the ground of interference is, not the question involved, but some anticipated injurious result, which is just as likely to be caused by the interference as prevented by it. Such holding, I think, would be without reason,

and so far as I am advised it would be without precedent." See, also, *Hagner* v. *Heyberger*, 7 W. & S. 104; *Hulseman* v. *Rems*, 41 Penn. St. 396; *Updegraff* v. *Crans*, 47 Penn. St. 103; *Hullman* v. *Honcomp*, 5 Ohio St. 237; *Sherman* v. *Clark*, 4 Nev. 138.

We do not remember ever to have examined a question where the authorities were so numerous, so generally scattered over the country, so uniform, and so clear as they are upon this question. Some of them are very similar to the case under consideration. *Moulton* v. *Reid*, *supra*, and *Updegraff* v. *Crans*, *supra*. We cannot say that there are no authorities the other way, for we do not suppose we have found all the cases in which the question has arisen, but so far as we have examined we have found none. If any exist, we trust our opponents will call attention to them. In *Hughes* v. *Parker*, 20 N. H. 58, this principle, as applicable to contests about the title to offices in private corporations, is distinctly recognized. It will be seen from some of the foregoing authorities, and from what is hereinafter said, that there are stronger reasons for the application of the rule in cases pertaining to public offices than in cases pertaining to the offices of private corporations, and that the rule governs both classes of cases.

Equity has no enlarged jurisdiction in this state differing from that at common law, or that in most of the other states. Our court of equity undoubtedly "has full chancery powers, and will administer relief in all cases falling within equity jurisdiction where the statutes have not provided other means of redress." But the foregoing authorities, both text-writers and court, unanimously hold that questions of the kind under consideration do not fall within equity jurisdiction, are not within the chancery powers of courts, but belong exclusively to courts of law, which furnish a plain and adequate remedy therefor. We ask attention, in this connection, to the briefs furnished by us in the case between these parties, that was before the court at the last December term; and also to the opinion of the court in that case—*ante* 282.

According to the decisions in this state, a court of equity will not interfere in cases of disputed rights about property, until those rights have been determined at law, except to prevent irreparable injury or a multiplicity of suits. *Coe* v. *Lake Co.*, 37 N. H. 254; *Burnham* v. *Kempton*, 44 N. H. 78; *B. & M. R. R.* v. *P. & D. R. R.*, 57 N. H. 200. If irreparable injury would result to one of the parties to this action by the other's taking possession of the office in question without right, such injury is quite as likely to follow from the issuing of an injunction as from withholding it; for, until this contested election is settled, it cannot be determined who is entitled to the office. If the defendant is legally entitled to the office, the possession of it by the plaintiff would cause irreparable injury to the defendant in the same way and to the same extent that the defendant's possession of it would to the plaintiff if he is

legally entitled to it.　Where it is uncertain whether irreparable injury will be prevented or caused by the interference of a court of equity, it will not act.　But we maintain that the plaintiff or the public is not liable to suffer irreparable injury, even if the plaintiff is entitled to the office in question, by the defendant's possession of the office until the plaintiff's right to it is established by an action at law.　The defendant, being in possession of the office under color of title,—namely, the declaration of the vote in his favor by the court,—will be an officer *de facto,* and his acts will be valid so far as the public and third persons are concerned. *Prescott* v. *Hayes,* 42 N. H. 58; *State* v. *Butman, ib.,* 494; 2 Dill. Mun. Corp., *s.* 892, *n.*　He cannot take possession of the office until he gives a bond for the faithful discharge of his duties.　G. L., *c.* 26, *s.* 1.　The plaintiff can maintain an action for money had and received against him for the salary that he receives while in possession of the office without right.　2 Saund. Pl. & Ev. 670; *Boyter* v. *Dodsworth,* 6 T. R. 681.

It is not claimed that the defendant is not amply able to respond to any judgment that may be recovered against him in such an action.　So the public and the plaintiff are fully protected against injury.

It may be said that two suits at law might be required to enable the plaintiff to get his rights—one to get possession of the office, and the other to get possession of the salary; but these would not constitute a multiplicity of suits within the meaning of the law. *Burnham* v. *Kempton,* 44 N. H. 95.

If the subject in dispute in this case was property (using that word in its common signification), and all the elements existed in the case that exist in this case, a court of equity would not assume jurisdiction of it, but would send the parties to the law court to settle their controversy.　But this suit does not relate to property: the title to a public office dependent upon the votes of the people is the subject in controversy.　It is not a fit subject for equity jurisdiction.　Equity cannot try the question any more speedily, fully, or fairly than a court of law can.　It would not ordinarily arrive at a decision of the question before the term of office begins, even in cases like the present.　The evidence in such cases is likely to be voluminous and conflicting, such as a jury is better adapted to weigh and decide upon than a chancellor.　If equity takes jurisdiction, its writ of injunction will be frequently sought after, and often obtained.　The excitements of elections will be continued and augmented by such proceedings *(People* v. *Galesburg,* 48 Ill. 489), and the court will be burdened with controversies that would not otherwise arise.　It is better that parties should be confined to their legal remedies, even though they seldom avail themselves of such remedies, for the reason that such decisions are not arrived at until the term of the office has partly expired. It is better that political controversies and excitement should cease

with the elections, even though some officers *de facto* be not officers *de jure.* Cool. Con. Lim. 626, *et seq.* And if a few months intervene between the elections and the time when the parties can controvert the results, cool, candid judgment may take the place of passion, and the peace of the community ·be greatly benefited thereby. We submit that the rule as laid down by High, and supported by such weight of authority, is particularly adapted to our present election laws, and we urge that it be followed in this case.

In High Ex. Rem., *s.* 641, he says,—" Since this remedy *(quo warranto)* is applicable the moment the office or authority is usurped, an injunction will not lie to restrain the exercise of official functions, even though there has been no actual entry upon the office. In such case, the party aggrieved should wait until an ' actual attempt is made to exercise the functions pertaining to the office, and then pursue his legal remedy by *quo warranto.*"

· SMITH, J. The usurpation of a public office or franchise is a public wrong. The remedy is, therefore, a public one, carried on in the name of the public prosecutor by an information in the nature of a *quo warranto.*

In the absence of statutory regulations, the common-law rule prevails, requiring the proceedings to be instituted in the name of the state by the attorney-general. A private citizen is not allowed to file the information in his own name, and of his own volition, for the law does not contemplate the use of this remedy by individual citizens to redress the wrongs of the state. The process is regarded as in the nature of a civil remedy, but retains the form of a criminal proceeding, so far at least as concerns the parties prosecuting, and the title of the cause. High Ex. Rem., *s.* 697; *Sir Wm. Lowther's Case,* 2 Ld. Raym. 1409; *Wright* v. *Allen,* 2 Tex. 158; *Murphy* v. *Bank,* 20 Penn. St. 415; *Commonwealth* v. *Burrell,* 7 Penn. St. 34; *United States* v. *Lockwood,* 1 Pinn. (Wis.) 359; *Cleary* v. *Deliesseline,* 1 McCord 35; *State* v. *Schnierle,* 5 Rich. 299; *Lindsey* v. *Attorney-General,* 33 Miss. 508; *State* v. *Gleason,* 12 Fla. 190; *State* v. *Company,* 1 Zab. (N. J.) 9; *In re Bank of Mount Pleasant,* 5 Ohio 249; *State* v. *Moffitt,* 5 Ohio 358; 3 Bl. Com. 262, 263; *People* ·v. *Utica Ins. Co.,* 15 Johns 358; *People* v. *Ridgley,* 21 Ill. 66; *People* v. *Holden,* 28 Cal. 123.

The principle is a familiar one, that equity will not interpose to afford relief where full redress can be had at law. A *quo warranto* information is a specific legal remedy to test the right to a public office, and affords a full and adequate remedy. It is applicable the moment the office or authority is usurped. It therefore is held to oust all equitable jurisdiction in such a case, and no injunction can be granted to restrain the exercise of official functions. High Ex. Rem., *s.* 641. The authorities in support of this rule are numer-

ous and uniform.    1 Dill. Mun. Corp., *s.* 272; 2 Dill. Mun. Corp., *s.* 890; 2 Kent 314; Pierce R. R. 27; *Hughes* v. *Parker*, 20 N. H. 58, 72; *Updegraff* v. *Crans*, 47 Penn. St. 103; *Attorney-General* v. *Insurance Co.*, 2 Johns Ch., 371, 376; *People* v *Insurance Co.*, 15 Johns 358, 378, 379; *Demarest* v. *Wickham*, 63 N. Y. 320. See, also, cases cited by the defendant, and extract from the opinion in *Dickey* v. *Reed*, 78 Ill. 261, quoted in the defendant's brief.

It would seem to be a fatal objection to the maintaining of this bill that the state is not represented.    This is a controversy between two persons, each claiming that he was elected to the office. Whatever our decision might be if this bill is maintained, the state by its prosecuting officer might go over the ground again on a *quo warranto* proceeding.    It is not an answer to this objection to say that the bill may be amended by inserting the name of the attorney-general as prosecutor, for he may not elect to become a party, or to adopt this process.

Equitable relief is not afforded where the title to property merely is involved, and where no irreparable injury appears until the plaintiff's title has been established at law.    *Burnham* v. *Kempton*, 37 N. H. 485: *Hodgman* v. *Richards*, 45 N. H. 28.    Much less should a remedy in equity be afforded to one who volunteers to redress a public wrong, without first having established his right to the office which he claims has been usurped.    A full and adequate remedy at law is available to the state whenever its prosecuting officer shall see fit to set on foot the process provided by law for determining whether a public wrong has been sustained.

No reason has been suggested why a bill in equity has any advantages over the common-law proceeding of *quo warranto* for determining the result of a contested election.    We discover no reason why we should depart from the beaten path.    The proceeding by way of a *quo warranto* information has had the approval of the best legal minds for many generations.    It is simple, expeditious, and under the control of such eminent legal ability as the state is able to command in the person of its principal prosecuting officer.    By refusing to sanction this innovation upon the ancient mode of proceeding, we believe the result will be on the one hand to discourage unnecessary litigation, and on the other that not only public but individual rights will be fully protected.

*Demurrer sustained.*

Doe, C. J., dissented.    Stanley, J., did not sit: the others concurred.