David N. HART, John J. Harding, Jr., Amy Teraoka, Audrey A. Sue, Joseph Kuon, Jr., Janice M. Boyles, John E. Newton, Guy M. Youngberg and James R. Page, Plaintiffs,

v.

Jean S. KING, Lieutenant Governor, State of Hawaii, William Paty, President of 1978 Hawaii Constitutional Convention, Karen Iwamoto, Chairperson of Submission and Information Committee, and the 1978 Hawaii Constitutional Convention, Defendants.

No. 78–0460.

United States District Court, D. Hawaii.

May 18, 1979.

Richard Turbin, Honolulu, Hawaii, for plaintiffs.

James T. Funaki, Honolulu, Hawaii, Maria Sousa, Deputy Atty. Gen., Honolulu, Hawaii, for defendants.

## ORDER GRANTING MOTION TO DISMISS

WILLIAM W SCHWARZER, District Judge.

Plaintiffs seek to invalidate the results of the November 7, 1978, general election dealing with amendments to the State Constitution presented to the electorate by the 1978 Constitutional Convention. Their complaint asks for a new election on the 34 amendments, all of which were passed by the necessary constitutional margin,[1] on the ground that they were improperly submitted to the electorate. Plaintiffs alleged jurisdiction under 28 U.S.C. §§ 1331, 1343(3) and (4) and 42 U.S.C. § 1981. Defendants have moved to dismiss.

The 1978 Hawaii Constitutional Convention, mandated by the voters in 1976 pursuant to Article XV, Section 2, of the State Constitution,[2] proposed 34 amendments for ratification by the electorate. The Convention, responsible under the Constitution for providing for "the time and manner in which the proposed constitutional revision or amendments shall be submitted to a vote of the electorate," Haw. Const. art. XV, § 2, set November 7 as the election date, designed the form of the ballot, and devoted over one month to informing the public of the proposed amendments.

---

1. Article XV, § 2, provides in part that "[t]he revision or amendments shall be effective only if approved at a general election by a majority of all the votes tallied upon the question, this majority constituting at least thirty-five percent of the total vote cast at the election."

2. Article XV, § 2, provides in part:
    The legislature may submit to the electorate at any general or special election the question, "Shall there be a convention to propose a revision of or amendments to the Constitution?" If any ten-year period shall elapse during which the question shall not have been submitted, the lieutenant governor shall certify the question, to be voted on at the first general election following the expiration of such period.

Plaintiffs argue that the punch-card ballot listing the 34 proposed amendments by short title deprived them of their constitutional right to vote effectively and intelligently because it allegedly was biased in favor of a "yes" vote on all the amendments and did not give the electorate an opportunity to abstain on particular amendments, allowing instead only "yes" and "no" votes. The ballot was divided into Parts A and B. Part A provided for a "yes" or "no" vote on all the amendments. Part B permitted the voter to vote "no" individually on any or all of the 34 proposed amendments. It provided that if a voter did not vote "no" on any individual amendment, a "yes" vote would automatically be recorded. The listing of the amendments in part B was preceded by the caption: "I VOTE *YES* ON EACH OF THE PROPOSED AMENDMENTS AS LISTED BELOW *EXCEPT* THAT I VOTE *NO* ON THE FOLLOWING."

Plaintiffs also claim that defendants failed to provide voters with accurate and adequate information prior to the election. They argue that the informational booklet, which described the proposed amendments and was included as part of the official ballot, contained duplications, omissions, and ambiguities with respect to at least 15 of the proposed amendments. In addition, they object to defendants' alleged failure to make the full text of the amended Constitution readily available prior to the election and at the polling places on the day of the election.

Plaintiffs did not seek pre-election relief in federal court. Their complaint was filed on November 30, 1978, more than three weeks after the election. An attempt was made in the Hawaii state court to enjoin the election, but it was unsuccessful. A post-election lawsuit was filed in the Supreme Court of Hawaii which, on February 1, 1979, held that several of the amendments had been improperly ratified but that the form of ballot and the information conveyed to the electorate as to the other amendments were adequate. *Kahalekai v. Doi,* 590 P.2d 543.

Plaintiffs do not dispute that they were aware well before the election of virtually all the alleged inadequacies of the form of ballot and the informational booklet and of the lack of publication of the full text of the amendments. Indeed, newspaper articles and editorials attached to plaintiffs' complaint indicate that as early as October 1978 the general public was made aware of these problems. The only challenged act of defendants which did not occur until the election was their failure to provide polling places with copies of the full text of the amended Constitution.

With respect to election challenges alleging racial discrimination, the law imposes a duty on parties to bring their grievances forward for pre-election adjudication. *Toney v. White,* 488 F.2d 310, 314 (5th Cir. 1973), an en banc decision written by then Judge Bell, discussed the reasoning behind this rule:

> We agree with the [three-judge] panel that the law imposes the duty on parties having grievances based on discriminatory practices to bring the grievances forward for pre-election adjudication. We also agree that the failure to require prompt pre-election action in such circumstances as a prerequisite to post-election relief may permit, if not encourage, parties who could raise a claim "to lay by and gamble upon receiving a favorable decision of the electorate" and then, upon losing, seek to undo the ballot results in a court action. [5 Cir.] 476 F.2d [203] at 209.
>
> This reasoning is sound in the abstract but it must be applied to the facts and circumstances obtaining in the particular case.

The Ninth Circuit adheres to this rule. *Chinese for Affirmative Action v. Leguennec,* 580 F.2d 1006, 1008 (9th Cir. 1978) (citing *Toney* and stating that "[t]he law imposes a duty on parties having grievances based on discriminatory practices to bring their complaints forward for preelection adjudication"), *cert. denied,* —— U.S. ——, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979).

Courts have refused to void state elections where parties who failed to seek pre-election relief had advance knowledge of

the discriminatory practices. In *James v. Humphreys County Board of Election Commissioners,* 384 F.Supp. 114, 126 (N.D.Miss. 1974), the court held that "to the extent that irregular election practices, even though infected with racial discrimination, were known to plaintiffs or in the exercise of diligence should have been well in advance of the election, such known or knowable practices would not be proper grounds for voiding the 1971 elections." These practices included the racial composition of election officials and the long-established location of two polling places in buildings disfavored by plaintiffs. In *McGill v. Ryals,* 253 F.Supp. 374, 376 (M.D.Ala.) (three-judge court), *appeal dism'd,* 385 U.S. 19, 87 S.Ct. 212, 17 L.Ed.2d 17 (1966), the court refused to grant a new election where the complaints of racial discrimination were long standing and no judicial relief had been sought prior to any of the challenged elections, stating that "the community has a substantial interest in stable elections and the prompt determination of their validity." And in *Smith v. Paris,* 257 F.Supp. 901 (M.D.Ala.1966), *modified on other grounds,* 386 F.2d 979 (5th Cir. 1967), the court refused to invoke the "extraordinary remedy" of setting aside an election where plaintiffs had known of a discriminatory new method of electing committee members for six weeks prior to the election but had failed to seek timely pre-election relief.

█ Courts will consider granting post-election relief only where the plaintiffs were not aware of a major problem prior to the election or where by the nature of the case they had no opportunity to seek pre-election relief. *E. g., Coalition for Education in District One v. Board of Elections,* 495 F.2d 1090 (2d Cir. 1974) (no lack of pre-election diligence where major problems, e. g., failure to advise voters where to vote, occurred on election day); *Bell v. Southwell,* 376 F.2d 659 (5th Cir. 1967) (election set aside where racial discrimination and intimidation occurred on election day at polling places).

█ Inasmuch as procedural and mechanical aspects of elections occupy a less favored constitutional status than racial equality, this is an a fortiori case for the application of the rule against granting post-election relief. Here, plaintiffs had knowledge of the alleged irregularities prior to the election and had ample opportunity to seek pre-election relief, as shown by the attempt to obtain pre-election relief in state court. The unsuccessful effort did not, however, relieve plaintiffs of their duty to apply for whatever relief they desired from the federal court prior to the election. Nor did the alleged failure of defendants to provide texts of the amendments at polling places relieve them of this duty. That failure was merely the final act in defendants' course of conduct of which plaintiffs had been aware and to which they had been objecting right along.

█ The Court concludes, therefore, that plaintiffs' failure to seek pre-election relief in federal court bars them from seeking to invalidate the results of the election now. This conclusion is reenforced by the general reluctance of federal courts to decide the validity of a state election where state courts are, as here, fully able to provide a remedy. The voiding of a state election is "[d]rastic, if not staggering . . . and therefore a form of relief to be guardedly exercised." *Bell v. Southwell, supra,* 376 F.2d at 662. Routine election irregularities do not provide a sufficient basis for such action. *Hennings v. Grafton,* 523 F.2d 861 (7th Cir. 1975); *Powell v. Power,* 436 F.2d 84 (2d Cir. 1970). A federal court should decide the validity of a state election only when "confronted with an officially-sponsored election procedure which, in its basic aspect, was flawed." *Griffin v. Burns,* 570 F.2d 1065, 1078 (1st Cir. 1978) (after the election the Rhode Island Supreme Court quashed absentee ballots, the use of which had been authorized by the Secretary of State). See also *Briscoe v. Kusper,* 435 F.2d 1046 (7th Cir. 1970) (unannounced last minute change in the requirements for nominating petitions deprived candidates of the right to participate in an aldermanic election).

Here, plaintiffs do not allege defects so egregious as to render the election a sham. At most, they claim that the informational booklet could have been more accurate and detailed and that defendants could have

designed a better ballot. The Hawaii Supreme Court addressed those claims and gave plaintiffs limited relief. Under the circumstances as they appear from the pleadings, it would be improper for this Court now to inject itself into this controversy.

Accordingly, the action must be dismissed with prejudice.

IT IS SO ORDERED.