710 F.2d 177
 W.M. (Bill) HENDON, Bill Hendon for Congress Committee,
Peggy B. Hannah, individually and on behalf of
other voters of the Eleventh
Congressional District of
N.C., Appellants,
v.
NORTH CAROLINA STATE BOARD OF ELECTIONS, Robert W. Spearman,
Chairman, and Elloree M. Erwin, Ruth T. Semashko, William A.
Marsh, Jr., Robert R. Browning, Members of the N.C. State
Bd. of Elections, Haywood County Board of Elections, Jim
Francis, Chairman, and Tom Hart, Frank Queen, Members of the
Haywood County Board of Elections, Henderson County Board of
Elections, T.E. Mullinax, Jr., Chairman, Nicholas Semashko,
Larry Justus, Members of the Henderson County Board of
Elections, McDowell County Board of Elections, S.R. "Jack"
Triplett, Chairman, and Janet N. Norton, Walter W. Bill
Rowe, Members of McDowell County Board of Elections,
Rutherford County Board of Elections, James H. Burwell,
Chairman, J.D. Cooley, Bill Penson, Members, Rutherford
County Board of Elections, Transylvania County Board of
Elections, John R. Hudson, Chairman, William C. Mann, Henry
R. Crais, Members Transylvania Board of Elections, and Jamie
McClure Clark, Appellees.
 No. 82-2122.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 11, 1983.
Decided June 23, 1983.
 
 Robert B. Long, Jr., Asheville, N.C. (Long, Parker & Payne, Asheville, N.C., James F. Schoener, Miller, Canfield, Paddock & Stone, Birmingham, Mich., on brief), for appellants.
 James Wallace, Jr., Deputy Atty. Gen. for Legal Affairs, Raleigh, N.C. (Sandra M. King, Asst. Atty. Gen., Raleigh, N.C., on brief), and Herbert L. Hyde, Asheville, N.C. (Herbert L. Hyde, P.A., Asheville, N.C., on brief), for appellees.
 Before WINTER, Chief Judge, ERVIN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 W.M. Hendon, his re-election committee, and Peggy B. Hannah appeal from a judgment of the district court declaring certain North Carolina election laws constitutional and denying a recount of ballots cast in the November 2, 1982, general election for the United States House of Representatives for the eleventh district of North Carolina. We reverse in part and declare portions of N.C.Gen.Stat. Secs. 163-151 and 163-170 (1982) unconstitutional. Our declaration, however, applies prospectively, and we do not order a recount.
 
 
 2
 * In the November 2, 1982, general election, voters in the eleventh congressional district voted in one of four ways: (1) a hand counted paper ballot listing only the congressional race; (2) a mechanical lever voting machine; (3) an electronic punch card system (CES); and (4) an optically scanned paper ballot system (Airmac). The CES system was used in two counties. With CES, the voter punches a hole beside the party or candidate of his choice. The ballots are then inserted into a machine that electronically counts the selections of the voters. The Airmac system was used in all of one county and parts of two others. With Airmac, the voter marks a ballot with a special pen. The ballots are then fed through a machine which optically scans them and counts the selections of the voters.
 
 
 3
 All votes cast in the general election were counted in accordance with the North Carolina election laws.[1] The law permits a person to vote a straight party ticket by simply marking the party circle on the ballot above the party column. N.C.Gen.Stat. Sec. 163-151(4) (1982). To vote a split ticket, the voter must not mark the party circle. Instead, the voter must mark the individual square for each candidate whom the voter favors. Secs. 163-151(5)(a); 163-170(6)(b). If a voter marks the party circle of any party and also marks the square for an individual candidate of another party, the ballot is counted as a straight ticket vote for all candidates of the party whose circle was marked, and the square marked for the individual candidate of another party is not counted. Secs. 163-151(5)(b); 163-170(6)(a). Similarly, in the case of write-in votes, if a voter marks the party circle of any party and also writes in the name of a candidate of any other party, the write-in is disregarded and the ballot is counted as a straight ticket vote. Secs. 163-151(6)(b) and (d); 163-170(5)(c) and (d)(2).
 
 II
 
 4
 The results of the general election were close. The Democratic candidate received 85,410 votes; the Republican candidate, Hendon, 84,085 votes; and the Libertarian candidate 1,552 votes.
 
 
 5
 Hendon challenged the results in the five counties using the CES or Airmac systems and requested a recount. He contended that a substantial number of persons in those counties voted a straight Democratic ticket and also voted individually for him but that these ballots were counted for the straight Democratic ticket candidate. Each of the county boards of elections denied Hendon's recount petitions, despite undisputed evidence that ballots were marked both straight Democratic and for Hendon. The state board of elections denied Hendon's appeal of the decisions of the county boards of elections.
 
 
 6
 Hendon, his re-election campaign committee, and Hannah, a registered voter in Haywood County, then filed this action pursuant to 42 U.S.C. Secs. 1971, 1973, 1983, and 1985 for alleged violations of the equal protection and due process clauses of the fifth and fourteenth amendments of the United States Constitution.[2] They sought a declaration that N.C.Gen.Stat. Secs. 163-151 and 163-170 are unconstitutional, an injunction barring the state board of elections from certifying the Democratic candidate as the winner in the eleventh congressional district, and an order for a recount of ballots cast in the five challenged counties.
 
 
 7
 The district court found none of the challenged statutes unconstitutional. Consequently, it denied the other relief the appellants sought.[3] The district court held that the challenged statutes did not violate the equal protection clause because all voters in each precinct were treated alike using the same voting methods and counting rules. Furthermore, assuming there was evidence of discrimination, the court found that North Carolina had "a compelling interest in adopting a system of voting which will permit the voters to vote without undue delay; to count the votes within a reasonable time and to prevent fraud and illegal procedures." Finally, it held there was no violation of due process, because the form of the ballots and the election procedures did not reach the point of patent and fundamental unfairness.
 
 III
 
 8
 The Constitution protects the right of qualified citizens to vote and to have their votes counted as cast. Because of the importance of this right, "any alleged infringement ... must be carefully and meticulously scrutinized." Reynolds v. Simms, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964). Therefore, laws that place conditions on this right must promote a compelling state interest. See Dunn v. Blumstein, 405 U.S. 330, 336-37, 92 S.Ct. 995, 999-1000, 31 L.Ed.2d 274 (1972).
 
 
 9
 The principal vice of the North Carolina statute lies in its mandate that a ballot marked for a straight party ticket and for an individual candidate of another party, whether by mark or write-in, shall be counted for the straight party ticket. The imposition of a legislative preference for the straight party candidate, when the voter has indicated no such preference, is an arbitrary subversion of the electoral process that serves no compelling state interest.
 
 
 10
 At least two other courts have reached the same conclusion, and none holding to the contrary has been called to our attention. In Melchoir v. Todman, 296 F.Supp. 900, 901-02 (D.V.I.1968), Judge Hastie, who was then Chief Judge of the Court of Appeals for the Third Circuit, wrote:
 
 
 11
 Section 584(c)(4) of Title 18, Virgin Islands Code, provides that where a voter in a territorial election shall mark his ballot in the "Party Column" to show that he votes for all candidates of a qualified political party and in addition shall vote for one or more individual candidates not of that party, the straight party vote shall be counted and the other individual vote or votes shall be disregarded.
 
 
 12
 ....
 
 
 13
 In the judgment of this court section 584(c)(4) thus applied is an arbitrary and invalid imposition of legislative preference where the voter has failed to indicate his own. Such action also discriminates unlawfully against the independent candidate because the attempted vote for him is treated as inferior to and less worthy of counting than a group vote for party nominees.
 
 
 14
 In Murchie v. Clifford, 76 N.H. 99, 79 A. 901, 902, 903-04 (1911), the court considered a statute that provided in part: "[U]nless canceled or erased, all names in the party columns under the circle marked by the voter shall be counted to the exclusion of others." The court held that this provision was invalid, saying: "[T]he legislature may enact the method by which a man shall vote, but cannot direct how the ballot he casts shall be counted."[4]
 
 
 15
 In concert with Melchoir and Murchie, we conclude that the legislative directive to count an improperly split ballot as a vote for the straight party ticket is unconstitutional. This provision of the statute denies the equal protection of the laws to both the voter and the opponent of the candidate named on the straight party ticket.
 
 IV
 
 16
 In addition to their complaint about the legislative mandate to count an improperly split vote for the straight party ticket, the appellants also contend that Sec. 163-151(5)(a) placed an unconstitutional burden on voters in the November 1982 general election who used the CES and Airmac systems. In order to split their ballot in accordance with this provision of North Carolina law, voters using the CES and Airmac systems had to vote for as many as 51 individual candidates. Voters using the traditional paper ballots, however, had no trouble splitting their ballots, because they were furnished separate ballots for the congressional race. Voters using mechanical voting machines also had no difficulty splitting their ballot, because the machines were calibrated to record a straight party ticket vote followed by an individual candidate vote, as an individual vote for the other party candidate and as individual votes for all other straight party ticket candidates.
 
 
 17
 It is not clear from the present record whether the CES and Airmac systems may be programmed to count ballots in the same manner as mechanical voting machines. The record includes the affidavit of an expert, to part of which the defendants objected, stating that he knew of no reason why the CES and Airmac systems could not be programmed to count a straight party vote, and a vote for an individual candidate, as a vote for the individual candidate and for the remaining straight party candidates. This, of course, is precisely what the North Carolina mechanical voting machines do. Because of the view which it took of the case, the district court found it unnecessary to examine the capabilities of the CES and Airmac systems.[5]
 
 
 18
 A state may employ diverse methods of voting, and the methods by which a voter casts his vote may vary throughout the state. See Carrington v. Rash, 380 U.S. 89, 91, 85 S.Ct. 775, 777, 13 L.Ed.2d 675 (1965). A state may not, however, place an onerous burden on voters' exercise of their right to vote, and there must be a rational explanation when it is manifest that a greater burden may be placed upon the voter depending upon the method of voting employed in his voting place. See Rosario v. Rockefeller, 410 U.S. 752, 760, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973); McDonald v. Board of Election Commissioners of Chicago, 394 U.S. 802, 807-09, 89 S.Ct. 1404, 1407-08, 22 L.Ed.2d 739 (1969).
 
 
 19
 We therefore conclude that although Sec. 163-151(5)(a) is not facially unconstitutional, it may turn out to be unconstitutionally applied if (a) the CES and Airmac systems can be programmed to record split tickets in substantially the same manner as voting machines and (b) the state offers no rational explanation for requiring voters who are furnished the CES and Airmac systems to suffer a much more onerous burden than voters who are furnished voting machines.V
 
 
 20
 The appellants next argue the ballots used in the general election failed to comply with the technical requirements of Sec. 163-140 pertaining to the printing of the ballots. They contend defects in the form of the ballots violate the due process clause of the fourteenth amendment. Among the alleged insufficiencies are: failure to divide the ballots into parallel columns separated by distinct black lines, failure to print party names in large type at the head of each party column, and failure to print instructions in heavy black type.
 
 
 21
 It is settled that if the election process reaches the point of "patent and fundamental unfairness," the due process clause may be violated. Griffin v. Burns, 570 F.2d 1065, 1077 (1st Cir.1978). But not every election irregularity gives rise to a constitutional claim. Whether the irregularity amounts to a constitutional claim depends on its severity, whether it was intentional or more of a negligent failure to carry out properly the state election procedures, and whether it erodes the democratic process. Gamza v. Aguirre, 619 F.2d 449, 453 (5th Cir.1980).
 
 
 22
 We agree with the district court that the failure of the ballots to comply fully with the statutory requirements does not constitute a violation of the due process clause. There is no indication that the failure was other than simple negligence on the part of election officials. In addition, the ballots used in the election sufficiently comply with the state law so that voters should not have been confused or deceived. Indeed, the appellants introduced no evidence of confusion or deception because of the form of the ballots.
 
 VI
 
 23
 Even though laws governing elections are found to be unconstitutional, courts in the exercise of their equitable jurisdiction may withhold immediate relief when restraint is justified. See Reynolds v. Sims, 377 U.S. 533, 585, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506 (1964); Starr, Federal Judicial Invalidation as a Remedy for Irregularities in State Elections, 49 N.Y.U.L.Rev. 1092 (1974). We believe it is appropriate to apply this principle to the appellants' request for a recount.
 
 
 24
 Courts have imposed a duty on parties having grievances based on election laws to bring their complaints forward for pre-election adjudication when possible. They have reasoned that failure to require pre-election adjudication would "permit, if not encourage, parties who could raise a claim 'to lay by and gamble upon receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action." Toney v. White, 488 F.2d 310, 314 (5th Cir.1973). Accord Chinese for Affirmative Action v. Leguennec, 580 F.2d 1006, 1008 (9th Cir.1978); Hart v. King, 470 F.Supp. 1195, 1197-98 (D.Hawaii 1979). To this general rule, there are, of course, exceptions arising out of a lack of opportunity for one reason or another to seek pre-election relief. See Toney, 488 F.2d at 312-15; Hart, 470 F.Supp. at 1198.
 
 
 25
 In this case we find no reason to depart from the general rule that denies relief with respect to past elections. The regulations which the appellants challenged have been in effect since 1955. The appellants introduced no evidence of any reason why they could not have challenged the constitutionality of these laws before the 1982 general election. Accordingly, we affirm, though for different reasons, the district court's denial of a recount.
 
 
 26
 The corollary to judicial reluctance to interfere with election results is the obligation to afford prospective relief. See Chinese for Affirmative Action, 580 F.2d at 1009. Accordingly, we remand this case to the district court for the entry of a judgment declaring N.C.Gen.Stat. Secs. 163-151(5)(b), (6)(d), 163-170(5)(d)(2), and (6)(a) to be unconstitutional. The judgment should include a provision enjoining election officials from counting as a vote for the straight party ticket all defective attempts, whether by mark or write-in, to split a ticket.
 
 
 27
 The district court should also determine whether the CES and Airmac systems can be programmed to accommodate split tickets in substantially the same manner as North Carolina's voting machines. If this can be done, the state should be afforded an opportunity to present its reason for treating voters who use voting machines differently from those who use the CES and Airmac systems. With this factual information at hand, the district court should determine whether Sec. 163-151(5)(a) is being unconstitutionally applied.
 
 
 28
 We leave the nature of other relief to the sound discretion of the district court. It may be appropriate to require the officials to treat the dual votes for a single office as void. As we have noted, there is precedent for this course of action.[6] Conversely, further proof may show that the integrity of elections can be maintained if the dual vote is treated as a vote for the individual candidate whom the voter has designated and all candidates on the designated straight party ticket, except the opponent of the individual candidate the voter favored. This would appear to recognize the intent of the voter, and it would be compatible with the counting of votes cast on machines.
 
 
 29
 The district court's judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Each side shall bear its own costs.
 
 APPENDIX
 
 30
 N.C.Gen.Stat. Secs. 163-151(4), (5), and (6), 163-170(5) and (6) (1982) provide in relevant part:
 
 
 31
 Sec. 163-151. Marking ballots in primary and election.
 
 
 32
 The voter shall adhere to the following rules and those instructions printed on the ballot in marking his ballots:
 
 
 33
 ....
 
 
 34
 (4) Straight Ticket.--In an election, but not a primary, if the voter desires to vote for all candidates of one political party (a straight ticket), he shall either:
 
 
 35
 a. Mark the party circle printed above the party column; or
 
 
 36
 b. Mark in the voting square at the left of the name of every candidate printed on the ballot in the party column for whom he desires to vote; or
 
 
 37
 c. Mark the party circle and also mark some or all names printed in that party column.
 
 
 38
 (5) Split Ticket.--In an election but not in a primary, if the voter desires to vote for candidates of more than one political party (a split ticket), he shall:
 
 
 39
 a. Omit marking in the party circle of any party and mark in the voting square opposite the name of each candidate of any party printed on the ballot for whom the voter wishes to vote.
 
 
 40
 b. If the voter should mark the party circle of one party, and also mark the voting square opposite the name of candidates of any other party, the ballot shall be counted as a straight ticket for all candidates of the party whose circle was marked and the individually marked candidates of any other party shall not be counted.
 
 
 41
 (6) Write-in Votes.--
 
 
 42
 ....
 
 
 43
 b. The voter should not write in a name of a person whose name appears as a candidate of a political party. If the voter writes in the name of a candidate printed on the ballot of any party, the write-in shall not be counted.
 
 
 44
 c. If the voter has marked the party circle of one political party, he may also write in the name of a person for whom he wishes to vote beneath the name of a candidate printed in the same column whose party circle he has marked.
 
 
 45
 d. If the voter has marked the party circle of one party, he should not write in the name of a person under the name of a candidate in any other party. In such case, the write-in shall not be counted, but the ballot shall be counted for all candidates of the party whose circle was marked.
 
 
 46
 Sec. 163-170. Rules for counting ballots.
 
 
 47
 ....
 
 
 48
 (5) Write-in Votes.--If a name has been written in on an official general election ballot ..., it shall be counted in accordance with the following rules:
 
 
 49
 ....
 
 
 50
 c. If the person whose name was written in appears as a candidate of a political party for any office, the write-in shall be ignored and the ballot shall be counted as though no write-in appeared for such office.
 
 
 51
 d. Marking Party Circle and Write-Ins.--
 
 
 52
 1. If the voter marks the party circle above the column in which he has entered the write-in, his ballot shall be counted as a vote for the person whose name has been written in, and for all other candidates of the party in whose circle he has marked, except the candidate beneath whose printed name the write-in appears.
 
 
 53
 2. If the voter has marked the party circle at the top of the column of a political party, and has made a write-in under the name of a candidate printed in a column of a different political party, the write-in shall not be counted, and the ballot shall be counted as a vote for all candidates of the party in whose circle he has marked.
 
 
 54
 (6) Split Ticket.--
 
 
 55
 a. If the voter has marked the party circle of one party and also marked the voting square of individual candidates of another party, the ballot shall be counted as a straight ballot and counted as a vote for every candidate for the party whose circle has been marked.
 
 
 56
 b. If the voter votes a split ticket by omitting to mark the party circle and marks the voting square opposite the name of candidates for whom he desires to vote in different party columns, the ballot shall be counted as a vote for each candidate marked in a different party column.
 
 
 
 [1]
 Pertinent sections of the North Carolina General Statutes are set forth in the appendix to this opinion
 
 
 [2]
 Named as defendants were the state board of elections and its members and the five county boards of elections and their members. After the suit was filed, the Democratic candidate was allowed to intervene as a defendant
 
 
 [3]
 Hendon has not challenged on appeal the refusal of the district court to enjoin the certification of the Democratic candidate
 
 
 [4]
 In both Melchoir, 296 F.Supp. at 902, and Murchie, 79 A. at 904, the courts held the ballots were improperly marked and could not be counted for either the straight party candidate or his opponent. The ballots, however, were considered validly cast for the other straight party candidates. See also Blackburn v. Hall, 115 Ga.App. 235, 154 S.E.2d 392, 398-401 (1967) (vote for straight party ticket and another candidate for same office is invalid)
 
 
 [5]
 In the oral argument of this case, we were told that the CES and Airmac systems probably could be programmed to record and count split tickets in the same manner as mechanical voting machines. Although the advice of counsel was in the form of a concession, his familiarity with the capabilities of the CES and Airmac systems was not demonstrated. We, therefore, hesitate to decide this factual question on the concession of counsel
 
 
 [6]
 See supra n. 5