Merrimack, }
April 4, 1911. }

## MURCHIE  v.  CLIFFORD.

Under the constitution, it is not essential that votes for county officers should be cast in the towns and wards in which the voters reside.

Ballots cast at a biennial election are not to be rejected upon a proceeding to determine a candidate's title to office merely because they were by mistake omitted from the sealed package of ballots transmitted by ward officers to a city clerk.

Where a ballot cast at a biennial election has a name written at the foot of a party column, with nothing to indicate the office for which it was intended, it cannot be counted for such person for any office.

The fact that a ballot cast at a biennial election bears a distinguishing mark is not cause for its rejection.

A voter who writes the name of his candidate for any office in the right-hand column of the official ballot is not required to further indicate his choice by placing a cross opposite the name so written.

A voter may write the name of his candidate for any office in the column of the official ballot reserved for that purpose, although it is already printed in a party column.

It is within the power of the legislature to enact laws reasonably regulating the exercise of the elective franchise and prescribing the methods by which the voters shall indicate their choice; but when a ballot has been cast, the intention of the voter as thereby expressed is a question to be finally determined by the judicial department of the government.

The statutory provision that official election ballots shall be counted for the uncancelled names in a party column under the circle marked by the voter, to the exclusion of all others, is not binding upon the court in a proceeding to determine the judicial question of the voter's intent.

Where a ballot cast at a biennial election is marked in a party circle, without cancellation or erasure in that column, and also has a cross opposite the name of a candidate for a given office in another column, it is impossible to determine which candidate was the choice of the voter, and the ballot cannot be counted for either.

PETITION, under section 1, chapter 66, Laws 1893, to determine the title to the office of solicitor for the county of Merrimack, to which the defendant was declared ele cted.   Trial before *Plummer*, J., who transferred the case from t he October term, 1910, of the superior court.   At the biennial election in November, 1910, there were 5,371 undisputed bal lots for each party to this cause. The result of the election depends upon the validity of the balloting for Ward 3, Franklin, and thirty-three disputed ballots.   Further facts appear in the opinion.

*Remick & Hollis* and *Alexander Murchie* (the plaintiff orally *pro se*), for the plaintiff.

*Martin & Howe* (the defendant orally *pro se*), for the defendant.

PEASLEE, J. ' 1. The city council of Franklin, when providing for the first election after the city organization had been perfected, adopted a resolution fixing the polling-place for Ward 3 within the geographical limits of Ward 2.   Elections have been held in accordance with the resolution for sixteen years.   This action of the city council was in pursuance of authority given by the legislature to fix the place for holding the annual meetings on fourth Tuesdays in November.   Laws 1893, c. 260, s. 10.   This procedure has been legalized by the legislature, so far as it had power to do so. Laws 1911, c. 303; *Eastman* v. *McCarten*, 70 N. H. 23.   The plaintiff claims that the election of county officers held in this way violates the constitutional restrictions of the right of suffrage. Our constitution contains no general provision on the subject. There are specific provisions as to the election of senators (*arts.* 27, 29, 30), representatives to the general court (*art.* 12), governor (*art.* 41), and councilors (*art.* 59).   As to other elective officers there is no constitutional limitation on the method by which they shall be chosen; and as to county officers it is provided in terms that "the legislature shall have authority to alter the manner of certifying the votes and the mode of electing those officers, but

not so as to deprive the people of the right they now have of electing them." *Art.* 70.

This provision, when first adopted in 1792, applied only to county treasurers and registers of deeds. "When the first constitution was established in 1776, registers of deeds were county officers, appointed by the government, whose duties and qualifications were prescribed by statute. And it is exceedingly clear that the only purpose and object of the provision inserted in that constitution relating to registers of deeds was the transfer of the appointment from the government to the people, and that the office was left in every other respect subject to the control of the legislature. . . . The constitution now in force prescribes that registers of deeds shall be elected by the people; that the right of electing them shall not be taken from the people. . . . These are all the restrictions on the power of the legislature on this subject contained in the present constitution." *Opinion of the Justices,* 7 N. H. 599, 601, 602.

"We may safely stand, we think, on the position that there is nothing in the nature of popular elections which, in the absence of positive provisions on the subject, requires that the right of suffrage should be exercised in the place where the voter resides; and that in New Hampshire this right, so far as concerns the time, place, and manner in which it is to be exercised, has always been regarded and is now to be regarded as wholly within legislative control, except so far as the power of the legislature over the subject has been limited and taken away by the constitution of this state or that of the United States." *Opinion of the Justices,* 45 N. H. 595, 598, 599.

"The constitution expressly confers upon the legislature the power to alter the mode of electing the county officers named therein, provided the people are not deprived of the right of electing them." *Opinion of the Justices,* 73 N. H. 618, 619.

These authorities are decisive of the question now presented. The legislature had power to change the mode of electing county officers, and in making that change was not bound to observe the inapplicable constitutional provision that votes for other officers should be cast in the town of the voter's residence.

2. Two of the ballots cast for the plaintiff in Ward 9, Concord, and which the election officers counted for him, were thereafter by mistake omitted from the sealed package of ballots sent by the ward officers to the city clerk. As soon as the error was dis-

covered, the two ballots were sealed up and also delivered to the city clerk. It cannot be seriously questioned that as the law is administered in this state these votes must be counted. The question to be decided is not whether some election officer has followed the requirements of the statute as to preserving the evidence of the voters' choice. The issue is: What was the legally expressed choice of the voters? On this issue the parties are agreed. If there was doubt as to whether these ballots were ever cast by voters in the ward, or their authenticity was questioned in any way, a different question might arise. As the case stands, but one conclusion can be arrived at as to the facts, and the votes must be counted. *Attorney-General* v. *Colburn,* 62 N. H. 70, 71.

3. A ballot regularly marked in the circle has also the name "Roy K. Dennison" written at the foot of the column. This vote is challenged upon two grounds. It is urged that the voter may have intended it as a vote for Dennison for solicitor, and so have voted for two persons for that office; or if this is not so, that this is a "distinguishing mark" and invalidates the ballot. As to the first contention, it is sufficient to say that there is no designation of Dennison as the choice of the voter for solicitor. Laws 1897, c. 78, s. 10. If the second position is well taken in fact, it is of no consequence in law. *Attorney-General* v. *Bartlett,* 75 N. H. 388.

4. A ballot marked with crosses opposite the names of all the republican candidates except the defendant and one other has the plaintiff's name written into the blank space in the right-hand column. It is objected that there is no cross after the name, and that as the name appears on the printed ballot it could not legally be written into the blank column. The statute provides: "A voter may omit to mark in any circle, and may vote for one or more candidates by marking a cross (X) in the square opposite the names, or he may insert the names of the candidates of his choice in the blank or right-hand column, and such votes shall be counted." Laws 1897, c. 78, s. 17. There is in this statute no provision that a cross is necessary to indicate the choice which has already been more clearly manifested by writing in the name. There is no prohibition of writing in a name already upon the ballot. The course here taken is neither directly nor impliedly forbidden, and the vote should be counted.

5. Three ballots marked with a cross in the republican circle and containing one or two straight marks in some of the other circles are objected to. These ballots seem to be plainly intended

for the republican ticket and should be so counted. The same conclusion is reached as to a ballot marked with three nearly parallel lines close together across the republican circle. There are no other marks on the ballot except the word "No" written in the "No" square on the license question.

6. A ballot marked with crosses in the republican circle and opposite Clifford's name, which name is erased, is claimed by the plaintiff because the cross is also at the left of his name. The evidence is too vague to warrant such a conclusion, and the vote cannot be counted.

7. There are twelve ballots which are questioned because of more or less equivocal markings and erasures. The result as to each depends upon an inspection of the individual ballot, and no question is involved the decision of which could be used as establishing a rule of law. As to these the conclusion is that four were intended for the plaintiff and six for the defendant, and they are so counted. Two ballots are each marked for two candidates and cannot be counted.

8. There are thirteen ballots marked with a cross in the party circle and one against the name of the opposing candidate for solicitor. It is claimed that these ballots must be counted for the candidate under the marked circle. This claim is based upon the statute which provides that "unless cancelled or erased, all names in the party columns under the circle marked by the voter shall be counted, to the exclusion of all others." Laws 1897, *c.* 78, *s.* 17. This provision is attacked as an unreasonable restriction upon the voter's right to cast a free ballot, and as infringing the judicial functions of hearing and weighing the evidence upon the issue to be determined.

On the other hand, it is said that this provision is merely a reasonable regulation of the exercise of the elective franchise, that legislative power to so regulate is everywhere admitted, and that to deny the validity of this provision would be to avoid all regulations under which elections are conducted. The argument is unsound in that it fails to take into account the nature of the question involved. The issue here is: For whom did the voter cast his ballot? This is a judicial question; and the power to decide it upon all the competent evidence in the case cannot be abridged by any act of the legislature. On the other hand, laws relating to residence, checklists, the use of official ballots, and the like, are regulations of the exercise of the right to vote. No judicial question is involved,

and so the regulations are valid unless they are so unreasonable as to abridge the voters' rights under the constitution.

The provision that the ballots shall be counted for the "names in the party columns under the circle marked by the voter, . . . to the exclusion of all others," is not a regulation of how the voter shall exercise his right, but an attempt on the part of the legislative department of the government to limit the scope of the inquiry to be made by the judicial department when called upon to decide a judicial question. It provides that certain evidence shall be conclusive. This means that no other evidence can be considered. The ballot is a written document, and the ascertainment of its meaning is a judicial function. Cool. Con. Lim. (7th ed.) 919, 920. The document is expressed partly in the English language and in part by arbitrary signs. The significance of these signs is found in the statute. From that statute it appears that the cross in the democratic party circle means a vote for the plaintiff, and that the mark opposite the defendant's name means a vote for him. Either taken by itself is a complete expression of the voter's wish. Having thus expressed his wish in two ways, either of which is sanctioned by the statute, but both of which cannot be given effect, the statute declares that one shall be taken by the court as the expression of his will, to the exclusion of all consideration of the evidence furnished by the other. It may be that upon a refined and strictly logical analysis of the entire ballot and all the provisions of the statute it could be concluded that the voter understood that what he had done in effect annulled the cross placed opposite the defendant's name. But the statute and ballot are not used entirely by those whose minds are trained to such a nicety of reasoning. They are for the use of the masses. They must be given a construction capable of being understood by ordinary men. The intent expressed by them is only such as those expressing it could entertain. In construing action taken by electors, the court takes into consideration that most voters are neither lawyers nor casuists. Any provision which seeks to deprive the court of this power must be disregarded. Undoubtedly the legislature may enact fully and precisely how the voter shall express his intent; but when this has been done and the voter has marked his ballot, the construction of the ballot, read in the light of the surrounding circumstances (including the statutory provisions), must be left to the court.

Further evidence that the ordinary voter does not understand the refined process by which his ballot is to be counted for the

candidate for whom he did not vote is found from an examination of the instructions to voters, prepared by the secretary of state and posted in the polling-room and over each marking-shelf. Laws 1897, c. 78, ss. 11, 13. These cards contain full directions for marking ballots and a statement of how a ballot so marked will be counted. How a defectively marked ballot will be counted is not stated.

When a voter complies fully with the provisions of the act as to the expression of his intent, the evidentiary facts from which his choice is to be found are capable of but one construction; but when he fails to comply with some provision of the act (as in this case), it can be found from the facts shown by the ballot that he did not intend to vote as the statute says his vote shall be counted. That is, upon the whole evidence it does not appear he intended to vote for A, yet the statute says his vote shall be counted for A. If the legislature may provide that, when ballots are marked like those in dispute, a tribunal charged with the duty of ascertaining the intention of the electors shall consider the failure to erase the name in connection with the cross in the circle, it cannot prescribe that such facts shall conclusively establish the intent of the electors. "The legislature cannot in this manner provide for the arbitrary exercise of power so as to deprive a person of his day in court to vindicate his rights. And the law which closes his mouth absolutely when he comes into court is the same, in effect, as the law which deprives him of his day in court." *Vega S. S. Co.* v. *Company*, 75 Minn. 309.

"The real and unchangeable fact in issue" being the choice of the voter, and more than one way of expressing that choice being permitted, it is not within the power of the legislature to declare that in determining that choice the court shall only consider the evidence of method A, to the exclusion of the evidence of method B. 2 Wig. Ev., s. 1353. The right of the voter, being a constitutional one, cannot be abridged in this way. In other words, the legislature may enact the method by which a man shall vote, but cannot direct how the ballot he casts shall be counted. *Attorney-General* v. *Colburn*, 62 N. H. 70.

The claim that the statute provides a definite rule for determining the question at issue is not entitled to weight, considering the nature of the proposition under consideration. Assuming as true what might well be questioned,—that following the statute would simplify the problem,—the fact remains that it is an attempt to substitute a legislative fiat for the judicial decision required by the

constitution. If the right involved were one the legislature might take away, it could doubtless provide that certain evidence should conclusively establish the non-existence of the right. This would not be an attempt to deprive judicial proceedings of an essential . feature, but a modification of substantive rights. Here the right to vote is guaranteed by the constitution. That right is not preserved except by the application of the rule suggested in *Attorney-General* v. *Duncan, ante,* 11. When the ballot shows that the voter thought he was acting as directed by the statute, his intention is to be given effect, exactly as it would be in the case of a will or written contract. *Attorney-General* v. *Colburn,* 62 N. H. 70.

. The power to decide how ballots shall be counted cannot be both legislative and judicial. "If it is a power which may be constitutionally exercised by the legislature, for that reason it cannot be exercised by a judicial tribunal." If it is a legislative act to say that ballots so marked shall be counted in a particular way, it would be equally one to decide every question involved in this contest. *Ashuelot R. R.* v. *Elliot,* 58 N. H. 451, 457. "The judicial function under the constitution is to apply the law; to apply the law necessarily involves the determination of the facts; and to determine the facts necessarily involves the investigation of evidence as a basis for that determination. To forbid investigation is to forbid the exercise of an indestructible judicial function. To make a rule of conclusive evidence, compulsory upon the judiciary, is to attempt an infringement upon their exclusive province." 2 Wig. Ev., s. 1353; *Birdsong* v. *Brooks,* 7 Ga. 88.

Cases in other jurisdictions giving force and a literal construction to statutes similar to this one are not applicable here. The recent case of *Attorney-General* v. *Bartlett,* 75 N. H. 388, would have been decided differently in the states which take a different view of the nature of the rights and questions involved. See *Cannon* v. *Clayton,* 86 Me. 42; *Parvin* v. *Wimberg,* 130 Ind. 561; *Whittam* v. *Zahorik,* 91 Ia. 23.

The question here is not distinguishable from the first proposition determined in *Attorney-General* v. *Colburn,* 62 N. H. 70. In that case the question was whether three ballots bearing the name "E. Everett Colburn" should be counted for Elias E. Colburn. The statute provided that "the full christian and surname of every person voted for, with the initial letter or letters of the middle name, and the usual abbreviations for junior, second, third, and the like, shall be written or printed upon every ballot; and every ballot not thus prepared and cast shall be regarded as a blank

and not counted." G. L., c. 31, s. 2. The utmost care had been taken to make it evident that the provision was mandatory, yet it was disregarded. "The evidence reported by the referee is competent to prove the fact that the three votes for 'E. Everett Colburn' and the forty-eight for 'Elias E. Colburn' were intended for the defendant; and there is no conflict of evidence. On the second as well as the third ballot, the defendant had a majority; and by the common law, in this appropriate action for the judicial trial and settlement of the title, it being proved by competent evidence that a majority of the votes were intended for him, he is entitled to judgment. . . . This rule is not altered by any statute relating to the election of supervisors" (p. 71).

It is said that, apart from the feature of the statute herein considered, a ballot marked with a cross in the circle must be counted for the names beneath to the exclusion of all others, because it evidences an intent to vote a straight ticket. This result is arrived at by failing to consider all the evidence. Turn the proposition around so that it is approached from the other side. The cross opposite one name in a column indicates an intent not to vote a straight ticket. This evidence can no more be ignored than that furnished by the cross in the circle. Indeed, it is considered by some courts to be of more weight, upon the theory that a special intent governs a general one. *Young* v. *Simpson*, 21 Col. 460. Theories based upon speculation as to which cross was made first cannot be entertained. The ballot is presented as a completed document. Each and every part of it is to be considered in determining its meaning.

Taking the ballot as a whole, it appears that the voter has expressed, or attempted to express, a choice of two persons for one office. It being impossible to determine which of those two was the one the voter thought he had voted for as the statute requires (*Attorney-General* v. *Duncan, ante,* 11), the ballot cannot be counted for either.

Of the thirty-three ballots considered, fifteen are so defective that the intention of the voter cannot be ascertained, eight are counted for the plaintiff, and ten for the defendant. From this it follows that the defendant was legally elected.

*Petition dismissed.*

Parsons, C. J., did not sit on the question of the Franklin vote and concurred in the remainder of the opinion: the others concurred.