Hillsborough, }
March 30, 1917. }

### GEORGE L. STEARNS *v.* JOHN T. O'DOWD.

A bill in equity cannot be maintained to determine a contested election to a county office; the remedy is by petition under Laws 1893, c. 66.

If a ballot cast at a biennial election is marked in a party circle, without cancellation or erasure in that column, and also has a cross opposite the name of a candidate for a given office in another column, it is impossible to determine which candidate was the choice of the voter, and the ballot cannot be counted for either.

Though a cross not within the circle but near it, might, in the absence of other marks, be interpreted as an attempt to vote a straight ticket, a cross, faintly made above the circle, other marks indicating an intention to vote a mixed ticket, was disregarded as showing only an unexecuted intention to vote a straight ticket.

Ballots, containing no cross opposite the name of the candidate who claims them, and none in any circle, but one or more crosses opposite his party electors, are not to be considered as marked by a cross within his party's circle.

The entry "defective" made on a regularly returned ballot, pursuant to Laws 1897, c. 78, s. 18, does not authorize a finding that the paper was not cast, but conclusively establishes its *status* as a ballot.

A finding that ballots were intended to be marked "cancelled," as required to be placed on spoiled ballots by Laws 1897, c. 78, s. 16, is supported by evidence that they were marked "no good," "void," "spoilt."

PETITION, under section 1, chapter 66, Laws 1893, to determine the title to the office of sheriff of the county of Hillsborough, to which the defendant was declared elected. The petition alleged that upon a correct count of the ballots cast the petitioner received a plurality of the votes for the office of sheriff and was elected.

The petition was referred to a master who found on the ballots cast that Stearns received 10,025 votes, and O'Dowd, 10,043, and that there was controversy as to the proper counting of 120 ballots which, numbered and fully described, were returned as a part of the report.

Forty-nine ballots were marked with a cross in the circle of one party and with a cross opposite the name of the nominee of the opposing party for sheriff without erasure of the name of the candidate in the column under the circle which was marked. The master counted these according to the cross in the circle, thirty-one for O'Dowd and eighteen for Stearns.

There were sixteen ballots marked "defective" and eleven marked "cancelled," "void," "no good," or "spoilt," none of which were included in the master's count. Upon the return of the master's report each party claimed election and moved for a certificate. Subject to exception, the court found the defendant, O'Dowd, elected and ordered a certificate of election to be issued to him, March 31, 1917. All questions of law raised by the record were reserved and transferred by *Branch*, J., from the January term, 1917, of the superior court, and sufficiently appear in the opinion.

*Jones, Warren, Wilson & Manning*, with whom was *Harry T. Lord* (*Mr. Manning* orally), for the plaintiff.

*Thomas H. Madigan, Jr.*, orally, for the defendant.

PARSONS, C. J. In the record sent to this court the proceeding is labelled, "Bill in Equity." The defendant objects that a bill in equity cannot be maintained to determine the title to an office. The objection is well taken. A proceeding in equity does not lie, because there is an adequate remedy at law by *quo warranto*, which, however, cannot be brought until there has been an usurpation of the office, which cannot take place before the commencement of the

term of the office in dispute. *Attorney-General* v. *Megin*, 63 N. H. 378; *Osgood* v. *Jones*, 60 N. H. 543; *Osgood* v. *Jones*, 60 N. H. 282. County officers are chosen biennially on the Tuesday next following the first Monday in November. The returns are canvassed and the result declared on the first Tuesday of December; but generally, if not in all cases up to the present time, the officers elect do not enter upon their offices until the first of the following April. Until 1893 controversy over an election could not be litigated until the term of office began, practically six months after the election. In that year it was provided that a contest over a county office might be determined upon the petition or application of any candidate interested as well before the term of such office began as after. Laws 1893, *c.* 66.

The present proceeding is a petition, or application, under the statute by one of the candidates for the office and in no sense a "Bill in Equity." The decision in *Murchie* v. *Clifford*, 76 N. H. 99, which was followed in *Dinsmore* v. *Mayor*, 76 N. H. 187, settles the proper construction of the split or double marked ballots,— being votes for both candidates they can be counted for neither. The fact that the statutory provision giving greater weight to the cross in the circle as evidence of the voter's intention, repealed shortly after the decision in *Murchie* v. *Clifford* (Laws 1911, *c.* 188), was later reënacted, Laws 1915, *c.* 119, cannot affect the construction heretofore given the provision as an unconstitutional invasion of judicial power. If it be conceded that the judicial view of the legislation was in mind when the provision was reënacted, it would follow that it was then understood the provision would be disregarded in a judicial interpretation of the ballot. The double marked ballots cannot be counted. One of these, however, number 27, though counted for O'Dowd on the ground of a cross in the Democratic circle was not so marked. There are heavy crosses opposite the names of a candidate for each office on the ticket, including one against Stearns' name with none opposite O'Dowd's. There is no cross in either circle but a light cross just above the Democratic column. When a cross is not within the circle but near it, it may, in the absence of other marks, be interpreted as an attempt to vote a straight ticket. In this case the voter, by marking every candidate and dividing his marking between the parties, furnished competent evidence of his intention not to vote a straight ticket. A cross in the circle would have indicated an intention to vote the whole ticket of the party to which the circle belonged and

it would then be impossible to determine his actual intent. On this ballot the voter clearly expressed an intent to vote a mixed ticket; to vote for Stearns and not to vote for O'Dowd. The most that can be said of the stray cross at the top is that it is evidence of an imperfectly executed intent to vote a straight ticket. The direction of the statute printed upon the ballot requires for a straight vote a cross in the circle. The voter made no cross there and in view of the direct evidence of his purpose elsewhere expressed on the ballot it cannot be found that he intended a cross not in the circle as indicating his preference. If this cross were the only one on the ballot, the interpretation would be aided by the presumption that the voter intended the paper prepared by him as a ballot; and, to prevent loss of his vote, his main purpose would be carried out by giving to the mark made by him the only interpretation possible. But the vote he attempted to give by properly executed crosses cannot be destroyed by an unexecuted intention to vote a straight ticket. The statute, after providing that a cross in the circle is a vote for a straight ticket continues, "Provided, however, that a voter may omit to mark in any circle and may vote for one or more candidates by marking a cross (X) in the square opposite the names . . . of the candidates of his choice." The voter in this case followed the statute, he did not mark in any circle but made a cross opposite Stearns' name and none against O'Dowd's. The ballot is a vote for Stearns.

Eleven ballots were claimed as votes for O'Dowd which contained no cross opposite O'Dowd's name and none in any circle. There are on them one or more crosses in the space opposite the Democratic electors and not in the square provided for voting for the electors by a single cross. It cannot be said that marks so situated indicate an attempt to mark a cross within the circle,—the only method by which an intent to vote a straight ticket can be expressed by a single cross.

"The ballot is a written document, and the ascertainment of its meaning is a judicial function." Murchie v. Clifford, 76 N. H. 99, 104. And is a question for the law court. State v. Railroad, 70 N. H. 421, 434. Whether certain papers offered as ballots were actually cast as such is a question of fact for the trial court. Murchie v. Clifford, 76 N. H. 99, 101, 102.

Twenty-seven papers, apparently ballots returned with the others, were rejected by the master upon the ground that they were not cast as ballots. Sixteen of these were marked "defective" and

eleven either "cancelled," "void," "no good," or "spoilt." The plaintiff offered evidence as to many of these, that they were ballots actually cast and counted by the election officers. The master heard and reported the evidence but refused to consider it. The evidence was competent and should have been considered. The question of fact so presented cannot be here decided. This court cannot weigh the evidence. The finding of fact, however, cannot stand if there was no evidence to sustain it. The only evidence relied upon to overturn the presumption from the presence of the papers among the returned ballots are the entries above recited found on the papers apparently made by the election officers. The statute provides in the directions for counting ballots by the election officers: "All ballots not counted in whole or in part, on account of defects, shall be marked 'defective' on the back thereof by the moderator, and shall be sealed with the other ballots cast and returned to the city or town clerks." Laws 1897, *c.* 78, *s.* 18. There is no requirement that the particulars in which the ballot is considered defective should be noted on the ballot. The entry "defective" made on a ballot under this provision instead of authorizing the inference that the paper was not cast as a ballot, in the absence of other evidence conclusively establishes its *status* as a ballot. The finding as to these ballots, being without evidence to sustain it, is set aside.

A person wishing to vote is given one ballot only which he takes with him into the voting booth. "If any voter spoils a ballot, he may successively receive others, one at a time, not exceeding three in all, upon returning each spoiled one. The ballots thus returned shall be immediately marked 'cancelled' by the ballot clerk, and, together with those not distributed to the voters, shall be preserved." Laws 1897, *c.* 78, *s.* 16. If the statute is followed, ballots marked "defective" are ballots that have been cast and are returned with the others cast. Ballots marked "cancelled" are ballots not cast and are to be preserved with others not cast. The words, "no good," "void," "spoilt," may mean "cancelled,"—the word the statute requires to be placed on the spoiled ballots. There was, therefore, evidence to sustain the finding made as to the eleven. Evidence was offered tending to show that two of these, numbers 30 and 31, were cast as ballots and the marking "no good" placed upon them by direction of the moderator after they were taken from the ballot box. If upon consideration of the evidence the master's conclusion should be reversed, one of the ballots and possibly the

other would be counted for Stearns. There was no evidence tending to establish the verity of the other "cancelled" ballots. None of the eleven can now be counted. Of the ballots marked "defective" and not counted, two are votes for O'Dowd and seven for Stearns.

Objection is made by both parties to the conclusion of the master as to many of the ballots, but a careful examination of each disputed ballot does not disclose other error in their interpretation by him which would affect the result. As the matter now stands, without delaying for a finding of fact as to the ballots, Nos. 30 and 31, O'Dowd has 10,014 votes, and Stearns 10,015.

The master's count gave O'Dowd 10,043; to this should be added the two "defective" ballots and subtracting from this total the thirty-one "split ballots" gives the above result.

Similarly the correct count for Stearns is reached by adding to the master's count the seven "defective" and ballot "No. 27," eight in all, and subtracting the eighteen "splits" counted for him. As Stearns received upon a correct count of the ballots a plurality of the votes cast, he was elected and is entitled to a certificate of election.

*Exceptions sustained.*

All concurred.