WILLIAM D. DELAHUNT *vs.* PHILIP W. JOHNSTON & others.[1]

Plymouth. October 7, 1996. - November 8, 1996.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Elections,* Ballot, Recount. *Practice, Civil,* Election case.

In an action brought pursuant to G. L. c. 56, § 59, and G. L. c. 54, §§ 135, 135B, seeking a judicial determination concerning certain protested punch card ballots in a primary election, a Superior Court judge properly sought to discern each voter's intention and to give it effect and correctly concluded that a vote should be recorded for a candidate if a discernable stylus impression was made on or near the removable perforated rectangle on the ballot signifying that candidate, even though the rectangle had not been removed. [733-734]

CIVIL ACTION commenced in the Superior Court Department on October 2, 1996.

The case was heard by *Elizabeth B. Donovan,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Dennis Newman (Mark T. Collins & S. Stephen Rosenfeld* with him) for Philip W. Johnston.

*Haskell A. Kassler & Michael E. Mone (Mark Roder* with them) for the plaintiff.

WILKINS, C.J. The parties were candidates in the September 17, 1996, primary for the nomination of the Democratic Party for the office of United States Representative for the Tenth Congressional District. After the initial tabulation of the votes, the defendant Johnston was declared the winner with 266 more votes than the plaintiff Delahunt. Recounts were undertaken, pursuant to recount petitions filed in several

---

[1]The other defendants, not parties to this appeal, are the Secretary of the Commonwealth, the registrars of voters and town clerks for certain towns, and two other unsuccessful candidates for the Democratic nomination for United States Representative in the Tenth Congressional District, Ian A. Bowles and Walter S. Murray.

municipalities, and, on September 30, 1996, Johnston was again declared the winner with 175 more votes than Delahunt.

On October 2, 1996, Delahunt commenced this action, pursuant to G. L. c. 56, § 59 (1994 ed.), and G. L. c. 54, §§ 135, 135B (1994 ed.), seeking (a) a judicial determination concerning certain protested ballots and (b) an order restraining the Secretary of the Commonwealth from printing ballots for the November 5, 1996, general election with the name of Philip W. Johnston as the Democratic candidate for election as United States Representative from the Tenth Congressional District. On October 3, 1996, Johnston filed an answer seeking a judicial recount of certain additional protested ballots.

On October 4, a Superior Court judge held a trial and reviewed 956 contested ballots, all but ten of which were cast on punch cards. Of the contested ballots, 765 came from Weymouth. The trial judge counted as votes for either Delahunt or Johnston many ballots that had previously been recorded as blank. Reflecting the newly identified votes, the judge concluded that Delahunt was the winner. She ordered the Secretary of the Commonwealth to print Delahunt's name on the November ballot. Johnston appealed from the judgment, and we granted his application for direct appellate review. On October 7, the court heard oral argument, and, on October 8, the court entered an order affirming the judgment and indicating that an opinion or opinions would follow. This opinion is given in explanation of the order affirming the Superior Court judgment.

The central issue in this case was whether certain punch card ballots, designed to be counted by computer, should be recorded for a candidate or treated as blank. A voter using the punch card system uses a stylus to punch a hole in the ballot above the number which has been assigned to a candidate or a ballot question. If a voter uses the stylus as the system is intended to work and the ballot is properly positioned, a small perforated rectangle, called a chad, is removed from the card. The punch cards are then processed through a machine that counts the ballots as light passes through the punched-out holes. If the chad is not removed by the punching process, even though the stylus makes an impression on the card on or near the chad, the machine will record a blank. This punch card electronic voting system appears to be the same as that described in *McCavitt* v. *Registrars of Voters of Brockton*, 385 Mass. 833, 836 (1982).

The critical question in this case is whether a discernible indentation made on or near a chad should be recorded as a vote for the person to whom the chad is assigned. The trial judge concluded that a vote should be recorded for a candidate if the chad was not removed but an impression was made on or near it. We agree with this conclusion.

We apply the standard that has been expressed in our cases concerning the counting of punch card (and other) ballots. See *Connolly* v. *Secretary of the Commonwealth,* 404 Mass. 556, 568-569 (1989); *McCavitt* v. *Registrars of Voters of Brockton, supra* at 837-839. "The cardinal rule for guidance of election officers and courts in cases of this nature is that if the intent of the voter can be determined with reasonable certainty from an inspection of the ballot, in the light of the generally known conditions attendant upon the election, effect must be given to that intent and the vote counted in accordance therewith, provided the voter has substantially complied with the requisites of the election law; if that intent cannot thus be fairly and satisfactorily ascertained, the ballot cannot rightly be counted." *O'Brien* v. *Election Comm'rs of Boston,* 257 Mass. 332, 338 (1926). Our review of a voter's intent is a question of law that we decide de novo. *Connolly* v. *Secretary of the Commonwealth, supra* at 561.

We find unpersuasive Johnston's contention that many voters started to express a preference in the congressional contest, made an impression on a punch card, but pulled the stylus back because they really did not want to express a choice on that contest. The large number of ballots with discernible impressions makes such an inference unwarranted, especially in a hotly contested election.

It is, of course, true that a voter who failed to push a stylus through the ballot and thereby create a hole in it could have done a better job of expressing his or her intent. Such a voter should not automatically be disqualified, however, like a litigant or one seeking favors from the government, because he or she failed to comply strictly with announced procedures. The voters are the owners of the government, and our rule that we seek to discern the voter's intention and to give it effect reflects the proper relation between government and those to whom it is responsible.

Once one accepts, as we have, the presence of a discernible impression made by a stylus as a clear indication of a voter's

intent, our task is to assess each of the 956 ballots. We have done so and have agreed with the trial judge's conclusions on all but twenty-eight ballots.[2] Our totals concerning the contested ballots show that Delahunt gained 659 votes, Johnston gained 283 votes, and fourteen ballots were blank. This resulted in a net gain of 376 votes for Delahunt which more than offset Johnston's 175 vote lead before the contested ballots were counted.

[2]On balance, we are slightly more willing to find an intention expressed on ballots where the trial judge ruled there was none. The net effect of our willingness on twenty-three additional ballots to identify voters' intentions (and of our other disagreements with the judge [five ballots]) was insignificant. In the final calculations, Delahunt gained twelve new votes, and Johnston gained ten.