Ballot Law Commission
No. 2002-814

APPEAL OF PETER MCDONOUGH
(Ballot Law Commission)

Argued: January 29, 2003
Opinion Issued: February 11, 2003

*Nixon Peabody, LLP*, of Manchester (*W. Scott O'Connell* and *Patricia L. Peard* on the brief, and *Mr. O'Connell* orally), and *Shaheen and Gordon*, of Concord (*Steven M. Gordon* on the brief), for the petitioner.

*Stephen J. Judge*, acting attorney general (*Anne M. Edwards*, associate attorney general, and *Orville B. Fitch, II*, assistant attorney general, on the brief), for the State.

*Douglas, Monzione, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III* and *C. Kevin Leonard* on the brief, and *Mr. Douglas* orally), for John Coughlin.

*Richard J. Lehmann*, senate legal counsel, and *Betsy B. Miller*, house legal counsel, by brief for the President of the New Hampshire Senate and the Speaker of the New Hampshire House of Representatives, as *amici curiae*.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* by brief), for the New Hampshire Citizens Alliance for Action, as *amicus curiae*.

NADEAU, J. The petitioner, Peter McDonough, appeals a decision of the New Hampshire Ballot Law Commission (BLC) affirming the New Hampshire Secretary of State's certification of his opponent, John Coughlin, as the winner of the November 5, 2002 election for Hillsborough County Attorney. McDonough also asks us to exercise our original jurisdiction to address his constitutional concerns about New Hampshire straight ticket voting laws. While this appeal was pending, we temporarily

enjoined Coughlin from taking the oath of office. *See* RSA 653:10 (1996). We vacate the injunction and affirm.

*I. Background*

The following facts were presented to the BLC and are relevant to this appeal. McDonough and Coughlin were the two candidates for Hillsborough County Attorney in November 2002. McDonough was the incumbent and the Democratic candidate, while Coughlin was the Republican candidate. Because the initial vote count showed Coughlin received 226 more votes than McDonough, the secretary of state declared Coughlin the winner of the election. *See* RSA 659:81 (1996). McDonough requested a recount, which the secretary of state conducted. *See* RSA 660:1-:6 (1996). The recount reduced Coughlin's margin of victory to 126 votes. *See* RSA 660:5 (1996). The secretary of state certified Coughlin as the winner, *see* RSA 660:6, and McDonough appealed to the BLC. *See* RSA 665:6, II. The BLC held a two-day evidentiary hearing and reviewed 269 ballots that were contested from the secretary of state's recount. *See* RSA 665:9 (1996).

All of the ballots require a voter to make appropriate marks, by filling in ovals or arrows on the ballot, to be read by an optical scanning machine. (A sample ballot follows this opinion.) All of the ballots have the same layout, which begins with instructions to the voter for marking the ballot, followed by three columns for voting by party, voting on candidates and voting on constitutional questions. *See* RSA 656:4-:14 (1996).

The instructions on the ballots provide:

**INSTRUCTIONS TO VOTERS:**

1. To vote, complete the oval . . . opposite your choice like this . . . .
2. **To Vote a Straight Ticket**
 Complete the oval . . . opposite the political party of your choice, like this . . . if you wish to vote for all candidates running in that party. If you vote a straight ticket, but wish to vote for one or more individual candidates, you may do so, and your vote for an individual candidate will override the straight party vote for that office. However, if you vote for one candidate for an office where more than one candidate is to be elected, be sure to vote individually for all candidates of your choice for that office, because your straight ticket vote will not be counted.
3. **To Vote a Split Ticket**
 If you do not wish to vote for all candidates running in the same party, complete the oval . . . opposite the names of the candidates for whom you wish to vote like this . . . .

### 4. To Vote by Write-in
If you wish to vote for candidates whose names are not printed on the ballot, write in the names on the blank lines for write-in votes and fill in the oval.

*See* RSA 659:17 (1996). Each party is identified on the ballot by a symbol, which may be marked to allow straight ticket voting. Each candidate is then identified on the ballot by a square for the designated office, with lines for party designation. *See* RSA 656:5-:12. Finally, each constitutional question is identified by text, with an opportunity for the voter to vote "yes" or "no" by filling in the appropriate oval or arrow. *See* RSA 656:13.

At the hearing, the secretary of state testified about election voting procedures, ballot types and ballot language used in New Hampshire, and explained how he determines voter intent when conducting recounts of contested elections. He testified that it often is difficult to determine the intent of the voter. If the voter has marked the "straight ticket" oval on the ballot, the secretary of state counts any "skipped race" as a vote for the straight ticket party candidate. *See* RSA 659:66 (1996) (Counting Straight Party Vote); RSA 659:17, III (1996) (Instructions to Voters for Straight Ticket Voting). The secretary of state explained that he applies this rule to all ballots with both "skipped races" and straight ticket votes.

Melissa Lee Farrall, Ph.D., a linguistic psychologist, testified about the confusing nature of the voter instructions on New Hampshire ballots. In her opinion, the voter instructions require at least three years of college to understand. Finally, Paul McDonough testified about the summaries and charts he made to show the significance of the marks cast on each challenged ballot.

McDonough challenged all ballots where the voter: (1) filled in the appropriate mark to vote a straight ticket Republican ballot; and (2) made appropriate marks to vote for individual candidates, either Republican or Democrat; but (3) did not make any mark for candidates in the county attorney race.

McDonough argued that the secretary of state erroneously credited these ballots to Coughlin. He asserted that the challenged ballots with individual votes for some offices, but a "skipped vote" for the county attorney's office, rebutted the presumption that the voter intended to vote a straight ticket in that race. He argued, therefore, that the ballots should not be counted. After the hearing, the BLC, in a two-to-one decision, acknowledged the evidence showed the voter instructions on the ballot are difficult to understand, but upheld the secretary of state's certification of Coughlin as the winner of the race.

The BLC found that "there was not enough evidence presented to overcome the presumption that the voter, by marking the straight ticket party box, intended to vote straight party throughout the ballot despite having also voted for individual races." The BLC explained that, in its view, whenever a straight ticket vote is cast, it may "only be overridden by an actual additional vote for an individual candidate. If a race is left blank, but a straight ticket box has been marked, the straight ticket will trump." The dissenting member of the BLC opined that the majority applied an improper presumption to determine voter intent on the "skipped race" ballots, which was contrary to its legal duty on an appeal from a recount, and required a new election to be held in the race for Hillsborough County Attorney.

McDonough appeals the BLC's decision and seeks a writ of prohibition to enjoin the BLC from counting such "skipped race" ballots in violation of the New Hampshire Constitution. Alternatively, he requests the court to order a new election.

## II. Preliminary Matters

We first address Coughlin's challenge to our jurisdiction over this case and the parties' disagreement about the appropriate standard of review.

 Coughlin argues that we lack jurisdiction over this appeal because RSA 665:14 (1996) does not provide an "express statutory right of appeal to the Supreme Court for the office of County Attorney." "Even assuming the absence of a statutory right of appeal, this court cannot be divested of its power to correct errors of law and other abuses, by writ of certiorari." *Taylor v. Ballot Law Comm'n*, 118 N.H. 671, 673 (1978); *see Dinsmore v. Mayor and Aldermen*, 76 N.H. 187, 189-90 (1911). We have adjudicated county election disputes in the past. *See Murchie v. Clifford*, 76 N.H. 99, 100 (1911) (challenge to election results for county solicitor office); *Stearns v. O'Dowd*, 78 N.H. 358, 359 (1917) (challenge to election results for county sheriff office). Furthermore, the form of the petition to this court is irrelevant to our review of McDonough's legal claims, because "[t]he superintending power of the court over inferior tribunals does not depend upon, and is not limited by, the technical accuracy of designation of legal forms of action." *Dinsmore*, 76 N.H. at 190; *see also Sheehan v. Mayor and Aldermen*, 74 N.H. 445, 446-47 (1908). Parties are entitled to "the most convenient procedure for settlement of their controversy." *Dinsmore*, 76 N.H. at 190. Therefore, we exercise our original jurisdiction in this case because "the parties desire and the public need requires, a speedy determination of the important issues in controversy." *Monier v.*

*Gallen,* 122 N.H. 474, 476 (1982); *see* RSA 490:4 (1997). Accordingly, we treat McDonough's appeal as a petition for a writ of certiorari.

■ By granting certiorari review, we also settle the parties' disagreement about the appropriate standard of review we should apply in this case. Contrary to McDonough's request that we conduct a *de novo* review of the challenged ballots, voter intent presents a question of fact, not a question of law. *See Broderick v. Hunt,* 77 N.H. 139, 141 (1913). In the context of a writ of certiorari, we will not conduct a *de novo* review of the evidence presented before the administrative tribunal. We will, however, review the BLC decision for legal errors with respect to jurisdiction, authority or observance of the law, causing it to arrive at a conclusion which could not legally or reasonably be made or causing it to act arbitrarily, capriciously or with an unsustainable exercise of discretion. *See Petition of Hoyt,* 143 N.H. 533, 534 (1999); *cf. State v. Lambert,* 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

## III. Discussion

McDonough first argues that the BLC erroneously credited the challenged ballots to Coughlin based upon the straight ticket Republican marks. He contends that by so doing, the BLC violated the fundamental duty of any election official, which is to ascertain the intent of the voter on each contested ballot. With respect to 172 of the challenged ballots, we disagree. We do not reach a determination with respect to the remaining 97 challenged ballots.

### A. General Legal Principles

■ Long ago we advised:

> In resolving election difficulties of this nature, care must be taken that the matter is not decided on the basis of unwarranted technicalities. The goal must be the ascertainment of the legally expressed choice of the voters. The object of election laws is to secure the rights of duly qualified voters, and not to defeat them. As a means to the end of ascertaining the popular will, a statutory recount is simply a resort to the ballots themselves as the primary and best evidence of the election.

*Opinion of the Justices,* 116 N.H. 756, 759 (1976) (citations and quotations omitted). "The cardinal rule for guidance . . . in cases of this nature is that if the intent of the voter can be determined with reasonable certainty from an inspection of the ballot, in light of the generally known conditions

attendant upon the election, effect must be given to that intent." *Delahunt v. Johnston*, 671 N.E.2d 1241, 1243 (Mass. 1996) (quotation omitted). If the voter's intent "cannot thus be fairly and satisfactorily ascertained, the ballot cannot rightly be counted." *Id.* (quotation omitted); *see In re Election of U.S. Representative*, 653 A.2d 79, 92 (Conn. 1994) ("ballots should, where reasonably possible, be read to effectuate the expressed intent of the voter, so as not to unreasonably disenfranchise him or her"). At oral argument, counsel for both parties agreed this standard is consistent with New Hampshire election laws and jurisprudence, and can be applied in this case.

Our election laws provide voters with several ways to express their intent. *See* RSA 659:17 (1996). The legislature directs voters to: "Vote for the candidate of your choice for each office by making the appropriate mark. Follow directions as to the number of candidates to be elected to each office." RSA 659:17, I. The statutory scheme further provides:

> II. A voter may vote for a candidate in a state general election ... by making the appropriate mark for the name of each candidate for whom he wishes to vote. If he desires to vote for a candidate whose name is not printed on the ballot, he shall write in the name of the person for whom he desires to vote in the space provided for that purpose.
>
> III. In a state general election, the following instructions to voters for straight ticket voting shall be printed on the ballot: Make the appropriate mark for the political party of your choice if you wish to vote for all candidates running in that party. If you vote a straight ticket, but wish to vote for one or more individual candidates, you may do so, and your vote for an individual candidate will override the straight party vote for that office. However, if you vote for one candidate for an office where more than one candidate is to be elected, be sure to vote individually for all candidates of your choice for that office, because your straight ticket vote will not be counted for that office.
>
> IV. In a state general election, the following instructions to voters for split ticket voting shall be printed on the ballot: If you do not wish to vote for all candidates running in the same party, make the appropriate mark opposite the names of the candidates for whom you wish to vote.

RSA 659:17, II-IV.

■ Pursuant to this statutory scheme, voters may vote for individual candidates, write in names of candidates, vote along straight party lines,

and vote along split party lines. None of these voting methods is required. Nor, as we read the permissive statutory language, are these methods exclusive of one another. *Cf. Murchie*, 76 N.H. at 104 (county election dispute decided under prior law when straight ticket vote was exclusive of any other mark on ballot). Thus, if a voter makes an appropriate mark for any candidate or office in substantial compliance with the above statute, the vote should be counted. *See id.* A vote should not be counted, however, for a candidate in a race in which the voter clearly did not intend to vote. *See State v. Kress*, 96 S.E.2d 166, 170 (W.Va. 1957). There is no provision in our laws requiring voters to vote for all offices in an election. *See id.*

■ We determine a voter's intent by giving weight to *all* marks placed on the ballot, regardless of the method by which the voter chose to cast a vote. *See Murchie*, 76 N.H. at 107. Marks on a ballot may not be ignored. *See id.*

■ In summary, the principles guiding our inquiry in this case are as follows: (1) we will not void an election because of mere irregularities or technicalities in the form of a ballot, election or vote; (2) we strive to enfranchise voters by giving effect to all marks on the ballot; and (3) we strive to avoid diluting votes by counting as votes marks that were intended to indicate the voter's intent to abstain. *See Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999). Our decision is not guided by party politics or a preference for a particular political candidate, but is guided by these neutral legal principles.

### B. Analysis

■ Keeping these principles in mind, which are consistent with our statutes and common law, we turn to the BLC's decision. The BLC determined that the evidence in this case was insufficient to rebut the presumption that the voter intended his or her straight ticket vote to apply to skipped races. We hold that the BLC's ruling was reasonable and sustainable on the record with respect to 172 of the ballots, in which the voter skipped seven or more races. When a voter left seven or more out of twelve races blank, the voter's intent to have his or her straight ticket vote count in the blank races can be determined with "reasonable certainty." We uphold the BLC's decision to count these 172 ballots for Coughlin.

Even if any of the remaining 97 challenged ballots should not have been counted for Coughlin, he would still win the election for Hillsborough County Attorney by a margin of 25 votes. Thus, we need not determine whether the BLC's ruling with respect to any of the remaining 97 ballots is sustainable.

We caution that, in a future case, evidence that a voter skipped races on the ballot could be considered strong evidence that the voter intended to abstain from the skipped races and did not intend his or her straight ticket vote to count in those races. For instance, if a voter were to mark the straight ticket box and then also mark the boxes next to each candidate of the straight ticket party in eleven out of twelve races, it might very well strain logic to hold, as the concurrence requires, that the voter intended to vote for a candidate in the twelfth race. It may well be that the more reasonable interpretation of that ballot was that the voter intended to abstain from the twelfth race.

In the future, the BLC must examine *all* of the evidence of the voter's intent, including the number of races left blank and whether the voter voted for individuals who were of the straight ticket party or of a different party. If the legislature responds to the concerns expressed by the secretary of state, the BLC and this opinion, the confusion feared by the concurrence should be eliminated.

We now address McDonough's constitutional challenges. McDonough argues that the BLC abrogated its judicial function to determine voter intent in favor of the statutory scheme. He argues that the BLC interpreted the statutory scheme to require it to apply a voter's straight ticket vote "despite inconsistent ballot markings." The record does not support his assertion. It shows that the BLC determined voter intent based upon the ballots themselves, and not by blind reference to the statutory scheme. Moreover, contrary to McDonough's assertions, the BLC did not find that the ballot markings were inconsistent with a straight ticket vote. Because the record does not support the factual predicate for this argument, we do not address it substantively.

McDonough next argues that the ballot instructions were so confusing as to interfere impermissibly with a voter's fundamental right to vote. Assuming, without deciding, that voters have a constitutional right to understandable ballot instructions, the factual record in this case is insufficiently developed for us to decide this issue as a matter of law.

The BLC heard, and rejected, testimony from McDonough's expert regarding the confusing nature of the instructions. The BLC determined that although "evidence was presented that the instructions on the ballot are confusing and difficult to understand," this evidence was insufficient to demonstrate that voters did not understand the instructions. "This is particularly true of the language nearest the oval to vote a straight ticket which states: . . . 'For all candidates of this party fill in the oval.'"

As the trier of fact, the BLC was free to reject the expert's testimony in whole or in part. *Appeal of Chickering*, 141 N.H. 794, 796 (1997). We cannot say that its rejection of the expert's testimony was legal error.

We also find no merit to McDonough's claim that missing statutory language in the instructions regarding voting in multiple candidate races confused the voters with respect to their straight ticket vote. The missing language is a technical irregularity that should not invalidate a vote. *See Keene v. Gerry's Cash Mkt., Inc.*, 113 N.H. 165, 167-68 (1975). Moreover, McDonough challenged no errors in the results of the multiple candidate races and there is no evidence that the missing language had any effect on the outcome of this election. *See id.* at 167.

We share the concerns, however, expressed by both the BLC and the secretary of state that the instructions for straight ticket voting required by RSA 659:17, III are "a source of great confusion to the voters of New Hampshire." We additionally note the straight ticket voting instructions and procedures have been a source of confusion under prior election laws. *See Murchie*, 76 N.H. at 107.

We are troubled also that the ballots do not instruct voters clearly and unambiguously about the circumstances under which their votes will not count. There are no instructions that explain when a skipped race will not be counted for any candidate. Having these kinds of instructions may avoid future disputes such as this one.

Having held that the BLC did not err with respect to 172 of the 269 challenged ballots, we deny McDonough's requests for a writ of prohibition and a new election. A writ of prohibition is an extraordinary writ used to prevent an inferior tribunal or agency from improperly exercising jurisdiction not granted. *See Wyman v. Durkin*, 114 N.H. 781, 783 (1974). This writ is granted with extreme caution, and then, "only when the right to relief is clear." *Durkin v. Hillsborough County Super. Ct.*, 114 N.H. 788, 789 (1974). In this case, McDonough's right to relief is not clear.

To set aside an election, a party "must prove either fraud which leaves the intent of the voters in doubt or irregularities in the conduct of the election of such a nature as to affect the result." *Appeal of Soucy*, 139 N.H. 110, 117 (1994) (quotation and brackets omitted). In this case, McDonough has not alleged or proved fraud, and although he asserts "irregularities," as discussed, these "irregularities" did not affect the result of the election.

Accordingly, we vacate our injunction preventing Coughlin from assuming the office of Hillsborough County Attorney and affirm his certification as the winner in this election for Hillsborough County Attorney.

*Affirmed.*

DUGGAN, J., concurred; FAUVER, J., superior court justice, specially assigned under RSA 490:3, concurred; MCGUIRE and ARNOLD, JJ.,

superior court justices, specially assigned under RSA 490:3, concurred specially.

McGUIRE and ARNOLD, JJ., concurring specially. Although we concur in the result, we would uphold the decision of the New Hampshire Ballot Law Commission (BLC) with respect to all 269 contested ballots. We agree with the majority, the BLC and the secretary of state that straight ticket balloting has led to voter confusion. We believe, however, that the majority erroneously questions the BLC's uniform rule of straight ticket ballot interpretation and exacerbates the confusion surrounding straight ticket balloting.

The issue before us is whether the decision of the BLC was illegal with respect to jurisdiction, authority or observance of the law, by arriving at a conclusion that could not legally or reasonably be made, or whether its exercise of discretion was unsustainable, arbitrary or capricious. *Petition of Herron*, 141 N.H. 245, 246-47 (1996); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard). This standard of review is "narrow and highly deferential." *In re Ryan G.*, 142 N.H. 643, 645 (1998). Unlike the majority, we believe that, in light of the instructions given to voters on the ballots and applicable election laws, the BLC's decision was both reasonable and sustainable on the record with respect to all of the challenged ballots.

The touchstone of the BLC's inquiry is voter intent. Voter intent is determined by examining the ballots, in light of relevant statutory provisions and the instructions to the voters. *See Murchie v. Clifford*, 76 N.H. 99, 104-05 (1911).

The relevant statutes and ballot instructions permit a voter both to vote straight ticket and to vote for individual candidates. The relevant portion of the straight ticket voting instruction reads as follows:

> Complete the oval ... opposite the political party of your choice ... if you wish to vote for all candidates running in that party. If you vote a straight ticket, but wish to vote for one or more individual candidates, you may do so, and your vote for an individual candidate will override the straight party vote for that office.

This instruction is based upon RSA 659:17 (1996). Under RSA 659:17, a voter may: (1) cast votes for individual candidates only, *see* RSA 659:17, II and IV; (2) cast a straight ticket vote only, *see* RSA 659:17, III; or (3) cast a straight-ticket vote and also vote for individual candidates of the same or of a different party, *see id.*

The only marks on the challenged ballots were the mark in the straight ticket box, a mark for one or more individual candidates, and on some but not all ballots, a mark on one or more constitutional questions. None of these marks was faint, crossed-out, or erased, indicating that the voter no longer intended it. *See Broderick v. Hunt*, 77 N.H. 139, 141 (1913) (faint, nearly wholly erased cross opposite plaintiff's name and heavy cross opposite challenger's name indicates vote for challenger); *McIntyre v. Wick*, 558 N.W.2d 347, 361 (S.D. 1996) (erasure indicates voter's intent to remove original mark).

In light of these marks and the relevant ballot instructions and statutes, the BLC determined that the voters intended their straight ticket vote on the challenged ballots to count in the skipped race for Hillsborough County Attorney. We would find no legal error in the BLC's exercise of its discretion and hold that its ruling was both reasonable and sustainable on the record with respect to all of the challenged ballots.

We believe that the majority errs by casting doubt upon the BLC's uniform rule of ballot interpretation. Under the BLC's uniform rule, merely voting for individual candidates is insufficient to overcome the presumption that a voter intended his or her straight ticket vote to count in skipped races. While suggesting that "in a future case," this rule might be unlawful, the majority fails to give the BLC guidance as to when or why this might be the case. This omission can only worsen the confusion surrounding straight ticket balloting.

The BLC's uniform rule of ballot interpretation is consistent with our case law. It seeks to give effect to *all* of the markings on a ballot, *see Murchie*, 76 N.H. at 107, and adheres to our general policy of interpreting ballots liberally to enfranchise voters, *see Opinion of the Justices*, 114 N.H. 711, 713 (1974). The BLC's rule also comports with the ballot instructions given to voters.

Moreover, having a uniform rule of ballot interpretation to determine voter intent "is practicable and . . . necessary." *Bush v. Gore*, 531 U.S. 104, 106 (2000). As the United States Supreme Court has explained, the use of uniform rules to determine voter intent is particularly necessary because "the question is not whether to believe a witness but how to interpret the marks or holes or scratches on an inanimate object, a piece of cardboard or paper . . . . The factfinder confronts a thing, not a person. The search for intent can be confined by specific rules designed to ensure uniform treatment." *Id.*

For all of the above reasons, we concur in the result but would uphold the BLC's determination with respect to all 269 contested ballots.

## INSTRUCTIONS TO VOTERS

1. To vote, complete the oval ⬭ opposite your choice, like this ⬬

2. To Vote a Straight Ticket
Complete the oval ⬭ opposite the political party of your choice, like this ⬬ If you wish to vote for all candidates running in that party. If you vote a straight ticket, but wish to vote for one or more individual candidates, you may do so, and your vote for an individual candidate will override the straight party vote for that office. However, if you vote for one candidate for an office where more than one candidate is to be elected, be sure to vote individually for all candidates of your choice for that office, because your straight ticket vote will not be counted.

3. To Vote a Split Ticket
If you do not wish to vote for all candidates running in the same party, complete the oval ⬭ opposite the names of the candidates for whom you wish to vote like this ⬬

4. To Vote by Write-in
If you wish to vote for candidates whose names are not printed on the ballot, write in the names on the blank lines for write-in votes and fill in the oval.

### STRAIGHT TICKET
## REPUBLICAN ⬭
For all candidates of this party fill in the oval

### STRAIGHT TICKET
## DEMOCRATIC ⬭
For all candidates of this party fill in the oval

### For Governor
Vote for not more than ONE:

CRAIG BENSON ⬭
REPUBLICAN
MARK FERNALD ⬭
DEMOCRATIC
JOHN J. BABIARZ ⬭
LIBERTARIAN
_____ WRITE-IN ⬭

### For United States Senator
Vote for not more than ONE:

JOHN E. SUNUNU ⬭
REPUBLICAN
JEANNE SHAHEEN ⬭
DEMOCRATIC
"KEN" BLEVENS ⬭
LIBERTARIAN
_____ WRITE-IN ⬭

### For Representative in Congress
Vote for not more than ONE:

JEB BRADLEY ⬭
REPUBLICAN
MARTHA FULLER CLARK ⬭
DEMOCRATIC
"DAN" BELFORTI ⬭
LIBERTARIAN
_____ WRITE-IN ⬭

### For Executive Councilor
Vote for not more than ONE:

RAYMOND J. WIECZOREK ⬭
REPUBLICAN
SHANNON O'BRIEN ⬭
DEMOCRATIC
_____ WRITE-IN ⬭

### For State Senator
Vote for not more than ONE:

ANDRE "ANDY" MARTEL ⬭
REPUBLICAN
"DAVE" GELINAS ⬭
DEMOCRATIC
_____ WRITE-IN ⬭

---

# OFFICIAL BALLOT FOR
# MANCHESTER – WARD 6
# GENERAL ELECTION
## November 5, 2002

SECRETARY OF STATE

### For State Representatives
Vote for not more than THREE(3):

WILLIAM INFANTINE ⬭
REPUBLICAN
BERNARD "BUD" LUEBKERT ⬭
REPUBLICAN
"CHRIS" SIEFKEN ⬭
REPUBLICAN
BENJAMIN C. BARDODY ⬭
DEMOCRATIC
"STEVE" JOHNSON ⬭
DEMOCRATIC
ROBERT E. MURPHY ⬭
DEMOCRATIC
_____ WRITE-IN ⬭
_____ WRITE-IN ⬭
_____ WRITE-IN ⬭

### For Sheriff
Vote for not more than ONE:

JAMES A. HARDY ⬭
REPUBLICAN
DAVID M. DIONNE ⬭
DEMOCRATIC
_____ WRITE-IN ⬭

### For County Attorney
Vote for not more than ONE:

JOHN COUGHLIN ⬭
REPUBLICAN
PETER McDONOUGH ⬭
DEMOCRATIC
_____ WRITE-IN ⬭

### For County Treasurer
Vote for not more than ONE:

DAVID G. FREDETTE ⬭
REPUBLICAN
JEROME B. DUVAL ⬭
DEMOCRATIC
_____ WRITE-IN ⬭

### For Register of Deeds
Vote for not more than ONE:

JUDITH A. MacDONALD ⬭
REPUBLICAN & DEMOCRATIC
_____ WRITE-IN ⬭

---

### For Register of Probate
Vote for not more than ONE:

ROBERT R. RIVARD ⬭
REPUBLICAN
"LEE" LOMBARD ⬭
DEMOCRATIC
_____ WRITE-IN ⬭

### For County Commissioner
Vote for not more than ONE:

"TONI" PAPPAS ⬭
REPUBLICAN
LESLEE STEWART ⬭
DEMOCRATIC
_____ WRITE-IN ⬭

### Question Relating to a Constitutional Amendment Proposed by the 2002 General Court

"Are you in favor of amending article 73-a of the second part of the constitution to read as follows: [Art.] 73-a. [Supreme Court Administration.] The chief justice of the supreme court shall be the administrative head of all the courts. The chief justice shall, with the concurrence of a majority of the supreme court justices, have the power by rule to regulate the security and administration of, and the practice, procedure, and rules of evidence in, all courts in the state. The rules so adopted shall have the force and effect of law. The general court may also regulate these matters by statute provided that the general court shall have no authority to abridge the necessary adjudicatory functions for which the courts were created. In the event of a conflict between a statute and a rule, the statute shall supersede the rule, if not contrary to the provisions of the constitution." (Passed by the N.H. House 290 Yes 48 No; Passed by State Senate 16 Yes 7 No) CACR 5

YES ⬭
NO ⬭

### Question Proposed pursuant to Part II, Article 100 of the New Hampshire Constitution

"Shall there be a convention to amend or revise the constitution?"

YES ⬭
NO ⬭

## TURN OVER TO CONTINUE VOTING